966 F.2d 690
 35 ERC 1171, 296 U.S.App.D.C. 170, 60
USLW 2784,
22 Envtl. L. Rep. 21,185
 FRIENDS OF THE EARTH, Petitioner,
v.
William K. REILLY, Administrator, U.S. Environmental
Protection Agency, Daniel W. McGovern, Regional
Administrator Region 9, U.S. Environmental Protection
Agency, and U.S. Environmental Protection Agency, Respondents.
 No. 91-1109.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 2, 1992.
Decided June 12, 1992.
 
 On Petition for Review of an Order of the Environmental Protection Agency.
 David Brett Kolker, with whom Rena I. Steinzor and Carrie G. Costello, Washington, D.C., were on the brief, for petitioner.
 Stephen M. Johnson, Atty., Dept. of Justice, Denver, Colo., with whom Barry M. Hartman, Acting Asst. Atty. Gen., Washington, D.C., was on the brief, for respondents. W. Christian Schumann, Atty., Dept. of Justice, Washington, D.C., and Joseph Freedman, Atty., E.P.A., Eugene, Or., for respondents.
 Before WALD, EDWARDS and HENDERSON, Circuit Judges.
 Opinion for the court filed by Circuit Judge HENDERSON.
 KAREN LeCRAFT HENDERSON, Circuit Judge:
 
 
 1
 In this petition for review, we must decide whether Friends of the Earth (Friends), an environmental advocacy group, is entitled under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504(a)(1) & 28 U.S.C. § 2412(b), to recover attorneys fees incurred when it intervened in a proceeding brought by the U.S. Environmental Protection Agency (EPA) under section 3006(e) of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6926(e), to withdraw North Carolina's authorization to administer its hazardous waste program. Because we conclude that the withdrawal proceeding is not an "adversary adjudication" as defined by 5 U.S.C. § 504(b)(1)(C), we deny the petition.
 
 I.
 
 2
 In November 1984, EPA granted North Carolina authorization to administer its hazardous waste program. North Carolina; Decision on Final Authorization of State Hazardous Waste Program, 49 Fed.Reg. 48,694 (1984); see also 42 U.S.C. § 6926(b).[1] In July 1985, GSX Chemical Services (GSX) applied for a permit to construct and operate an aqueous hazardous waste treatment plant near Laurinburg, North Carolina. In April 1987, North Carolina granted a draft permit.
 
 
 3
 On May 5, 1987, North Carolina asked EPA to review a state legislative proposal, Senate Bill 114 (S.B. 114), to determine its consistency with RCRA. S.B. 114 prohibited commercial hazardous waste treatment facilities from discharging waste water into surface water upstream from a public water drinking supply intake unless a dilution factor of at least 1000 at the point of discharge existed. Upon review, EPA notified North Carolina that S.B. 114 was inconsistent with RCRA and, if enacted, would make North Carolina's authorization subject to withdrawal. Nevertheless, in June 1987, North Carolina enacted S.B. 114.
 
 
 4
 In September and October 1987, GSX and the Hazardous Waste Treatment Council, a trade association of waste disposers, petitioned the EPA regional administrator in Atlanta, Georgia, to commence proceedings to withdraw North Carolina's authorization. In November 1987, the regional administrator ordered the commencement of withdrawal proceedings. North Carolina; Order to Commence Proceedings to Determine Whether to Withdraw Hazardous Waste Program Approval, 52 Fed.Reg. 43,903-06 (Nov. 17, 1987). Friends' predecessor, the Environmental Policy Institute, intervened. A hearing was held before an administrative law judge (ALJ). The ALJ concluded that S.B. 114 was not inconsistent with RCRA and recommended that North Carolina's authorization not be withdrawn. The regional administrator accepted the ALJ's recommendation and did not withdraw the authorization.[2]
 
 
 5
 Thereafter, in June 1990, Friends applied for $193,195.14 in attorneys fees and other expenses under the EAJA. The ALJ recommended that Friends' application be denied concluding that the withdrawal proceeding was not an "adversary adjudication" under the EAJA because it was not an adjudication "required by statute to be determined on the record after opportunity for an agency hearing."[3] Recommended Decision On Application For Attorney's Fees And Other Expenses By The Environmental Policy Institute at 19. On December 21, 1990, EPA issued a final decision adopting the ALJ's recommendation. In January 1991, Friends petitioned for review in the U.S. Court of Appeals for the Fourth Circuit and in March 1991, the petition was transferred to this court.
 
 II.
 
 6
 Under the EAJA,
 
 
 7
 [a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.
 
 
 8
 5 U.S.C. § 504(a)(1). An "adversary adjudication" is defined in relevant part as "an adjudication under section 554 of [the Administrative Procedure Act] in which the position of the United States is represented by counsel or otherwise." 5 U.S.C. § 504(b)(1)(C). Recently, the Supreme Court adopted "the most natural reading of the EAJA's applicability to adjudications 'under section 554' ... that those proceedings must be 'subject to' or 'governed by' § 554." Ardestani v. INS, --- U.S. ----, 112 S.Ct. 515, 519, 116 L.Ed.2d 496 (1991) (emphasis in original); see also Dart v. United States, 961 F.2d 284, 285 (D.C.Cir.1992); St. Louis Fuel & Supply Co., Inc. v. FERC, 890 F.2d 446, 451 (D.C.Cir.1989) ("Attorneys' fees may be awarded in adversary adjudications that are governed by APA section 554; they may not be awarded in adversary adjudications that Congress did not subject to that section."). As these authorities make clear, Friends can recover attorneys fees only if the withdrawal proceeding is "subject to" section 554 of the APA. Accordingly, we turn to this question.
 
 A.
 
 9
 The starting point of our inquiry is the language of RCRA's withdrawal provision, section 3006(e), 42 U.S.C. § 6926(e). Watt v. Alaska, 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). Section 3006(e) provides:
 
 
 10
 Whenever the Administrator determines after public hearing that a State is not administering and enforcing a program authorized under this section in accordance with the requirements of this section, he shall so notify the State, and, if appropriate corrective action is not taken within a reasonable time, not to exceed ninety days, the Administrator shall withdraw authorization of such program and establish a Federal program pursuant to this subchapter. The Administrator shall not withdraw authorization of any such program unless he shall first have notified the State, and made public, in writing, the reasons for such withdrawal.
 
 
 11
 42 U.S.C. § 6926(e) (emphasis added). The text requires only a "public hearing"; it does not expressly require either that the withdrawal hearing be "subject to section 554" or that the hearing be "on the record." See 5 U.S.C. § 554. Nevertheless, the absence of these "magic words" is not dispositive. St. Louis Fuel, 890 F.2d at 448; see also United States v. Allegheny-Ludlum Steel Corp., 406 U.S. 742, 757, 92 S.Ct. 1941, 1950-51, 32 L.Ed.2d 453 (1972). Rather, "[w]hat counts is whether the statute indicates that Congress intended to require full agency adherence to all section 554 procedural components." St. Louis Fuel, 890 F.2d at 448-49 (emphasis in original).
 
 
 12
 Friends gives several reasons for arguing that Congress intended withdrawal proceedings to be subject to section 554. First, Friends argues that because RCRA recognizes the states' traditional police power in environmental manners, Congress could not have intended to allow for withdrawal without a section 554 hearing. Second, Friends argues that, because withdrawal upsets both a state's interest as well as the public's expectation in the state's administration of its hazardous waste program and is a draconian remedy, Congress must have intended that section 554 procedures be used. Third, Friends argues that because withdrawal prevents a state from enacting more stringent requirements and is tantamount to preemption, Congress must have intended to require section 554 procedures.
 
 
 13
 Undoubtedly, a state's interest in the continued administration of its hazardous waste program is substantial. But even so, it does not follow that a section 554 hearing is necessary to ensure that the state's interest is adequately protected. A section 554 hearing, with its attendant procedural protections,[4] has as its primary purpose the determination of "adjudicative facts," i.e., those facts which "usually answer the questions of who did what, where, when, how, why, with what motive or intent ... [and] are roughly the kind of facts that go to a jury in a jury case." 2 Kenneth Culp Davis, Administrative Law Treatise § 12.3, at 413 (2d ed. 1979). A section 554 hearing is, in short, like a trial proceeding. But it does not necessarily follow that the nature of the interests at stake in a withdrawal proceeding requires a section 554 proceeding. Congress often preempts the states' police power through the legislative process and frequently grants agencies rulemaking authority over matters which were traditionally within the scope of the state's police power. Thus, the nature of the interests at stake in a withdrawal proceeding hardly seems to be dispositive of the question whether Congress intended to require a section 554 hearing. Rather, it seems to us that it is the nature of the issues to be resolved in the withdrawal proceeding which is determinative. Cf. Chemical Waste Management, Inc. v. EPA, 873 F.2d 1477, 1483-84 (D.C.Cir.1989) (in construing "public hearing" requirement of RCRA section 3008, agency reasonably concluded that informal procedures were proper "based on number and nature of factual issues expected in a typical ... proceeding").
 
 
 14
 The North Carolina proceeding demonstrates that the primary issues in a withdrawal proceeding frequently involve legal issues such as whether the state program is "equivalent to the Federal [RCRA] program" or is "consistent with the Federal or State programs applicable in other States." 42 U.S.C. § 6926(b). While factual issues may arise in the course of addressing these issues, these factual issues can be classified as involving "legislative facts"--those "general facts which help the tribunal decide questions of law and policy." Davis § 12:3, at 413. A section 554 hearing is rarely necessary to determine such facts. As Professor Davis notes: "Because the parties may often have little or nothing to contribute to the development of legislative facts, the method of trial often is not required for the determination of disputed issues about legislative facts." Id. In short, neither the interests involved nor the issues likely to arise in a withdrawal proceeding suggest that a section 554 hearing is required. We thus conclude that Congress, in providing for a "public hearing," did not intend that the withdrawal hearing be " 'subject to' or 'governed by' section 554."[5] Dart, 961 F.2d at 285.
 
 
 15
 This conclusion is buttressed by a comparison of the text of section 3006(e) with that of section 7001, 42 U.S.C. § 6971(b), RCRA's employee protection provision. Section 7001 prohibits, inter alia, discrimination against employees who have reported RCRA violations or testified in RCRA proceedings and authorizes the filing of a complaint with the Secretary of Labor. 42 U.S.C. § 6971(a) & (b). Upon receipt of a complaint, the Secretary is required to conduct an investigation which "shall provide an opportunity for a public hearing at the request of any party to such review to enable the parties to present information relating to such alleged violation." Of note, "[a]ny such hearing shall be of record and shall be subject to section 554 of Title 5." 42 U.S.C. § 6971(b) (emphasis added).
 
 
 16
 In St. Louis Fuel, we found it "significant" that the provision being reviewed required only a "hearing" but other provisions of the Department of Energy Organization Act "expressly invoke[d] the APA." 890 F.2d at 449. We think it also significant that while Congress, in enacting section 3006(e), merely required a "public hearing," it required a hearing "subject to section 554" in enacting section 7001(b). As the Supreme Court has frequently stated, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." INS v. Cardoza-Fonseca, 480 U.S. 421, 432, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987) (quoting Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983)).
 
 
 17
 Friends attempts to rebut this presumption by arguing that "Congress [did] not deliberately choos[e] to use distinct language in these two sections" but rather "summarily imported" the employee protection provision from the Clean Water Act, 33 U.S.C. § 1367(b). Friends' Reply Brief at 17. In Friends' view, despite the difference in language between section 3006(e) and section 7001, both sections require adherence to section 554 procedures. We think, however, that one reason Congress subjected section 7001(b) hearings to section 554 may have been that a claim of employment discrimination is much more likely than a withdrawal proceeding to require a determination of "adjudicative facts"--"who did what, where, when, how, why, with what motive or intent." Davis § 12.3, at 413. As the nature of the issues in a section 7001(b) proceeding may indicate, the difference between the language of each section's hearing requirements may exist because Congress tailored the hearing requirements to the issues likely to occur in each proceeding.[6]B.
 
 
 18
 Friends makes several arguments based on EPA's having subjected withdrawal hearings to its rules of practice for adjudicatory proceedings. See 40 C.F.R. § 271.23; see also 40 C.F.R. § 22.01. We find none of these arguments persuasive.
 
 
 19
 First, Friends argues that EPA's subjecting withdrawal hearings to these procedures is indicative of Congress's intent to subject them to section 554. An agency's interpretation of a statute, however, is not necessarily indicative of Congress's intent. Congress is frequently silent or ambiguous with respect to an issue. See e.g., Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc. 467 U.S. 837, 843, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984). Whether this silence or ambiguity is the result of Congress's failure to "consider the question," its inability "to forge a coalition on either side of the question" or its conscious decision to delegate the question to the agency, Chevron, 467 U.S. at 865, 104 S.Ct. at 2792-93, it is abundantly clear that an agency's interpretation of a statute does not necessarily mirror congressional intent. An agency does not speak for Congress; only Congress speaks for Congress. And the best evidence of how Congress has spoken in enacting section 3006(e) is the text of RCRA itself. West Va. Univ. Hosp., Inc. v. Casey, --- U.S. ----, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991). That text shows that Congress did not intend for withdrawal proceedings to be " 'subject to' or "governed by § 554.' " Ardestani, 112 S.Ct. at 519.
 
 
 20
 Friends also argues that Congress's failure to disapprove of EPA's subjecting withdrawal hearings to its rules of practice for adjudicatory hearings when RCRA was amended in 1984 and when EAJA was reenacted in 1985 indicates that Congress intended to subject withdrawal proceedings to section 554. We disagree. EPA's own regulations implementing the EAJA specifically delineate the proceedings subject to it; RCRA withdrawal proceedings are not so delineated. See 40 C.F.R. § 17.3(a). Inasmuch as these regulations were promulgated in 1983, before both RCRA's amendment and EAJA's reenactment, it cannot be argued that Congress's inaction reflects an intent to subject withdrawal proceedings to section 554. Congress's inaction is most fairly viewed, if at all, as an endorsement of EPA's determination that withdrawal proceedings are not adversary adjudications under the EAJA.
 
 
 21
 Finally, Friends argues that EPA's use of section 554 procedures in the withdrawal proceeding rendered it an "adversary adjudication" under the EAJA. In Friends' view, "the actual use of formal procedures is more important for EAJA purposes than determining whether formal procedures were required to be used...." Friends' Brief at 36. Friends further argues that even if we conclude that Congress did not intend to subject withdrawal proceedings to section 554, we should view Congress's having granted EPA the authority to determine the procedures to be used in the hearing as a waiver of sovereign immunity.
 
 
 22
 These arguments are foreclosed by both the Supreme Court's decision in Ardestani and our decision in St. Louis Fuel. As these decisions make clear, a proceeding is an adversary adjudication under the EAJA only if Congress intended that the proceeding be "subject to" section 554. Ardestani, 112 S.Ct. at 519; St. Louis Fuel, 890 F.2d at 451. An agency's decision to "add protections matching those of" section 554 is irrelevant absent Congress's having "compelled the augmentation." St. Louis Fuel, 890 F.2d at 449. It is similarly irrelevant that the withdrawal proceeding may be the functional equivalent of a section 554 hearing. See Ardestani, 112 S.Ct. at 521 (rejecting argument that "a functional interpretation [of EAJA] is necessary in order to further the legislative goals underlying the statute"); St. Louis Fuel, 890 F.2d at 451 (rejecting rule of construction "requiring case-by-case determination whether a particular proceeding is close enough to a section 554 hearing to be an adjudication 'as defined by' that section or 'of the type referred to' in it").
 
 
 23
 Finally, the EAJA is "a partial waiver of sovereign immunity" and "must be strictly construed in favor of the United States." Ardestani, 112 S.Ct. at 520. "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.' " United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Friends' argument that recovery under the EAJA is precluded only if "Congress explicitly provided that something less than full formal procedures would be made available under the statute in question," erroneously inverts the presumption against waiver of sovereign immunity.
 
 III.
 
 24
 Friends has failed to show Congress intended that withdrawal proceedings be "subject to" or "governed by" section 554. We therefore need not reach the issues whether EPA's position was "substantially justified" and whether Friends was entitled to fees in excess of EAJA's hourly rate.[7] The petition for review is
 
 
 25
 Denied.
 
 
 
 [1]
 Under section 3006(b), "[a]ny State which seeks to administer and enforce a hazardous waste program pursuant to [RCRA] may develop and, after notice and opportunity for public hearing, submit to the Administrator an application ... for authorization of such program." 42 U.S.C. § 6926(b). The Administrator must authorize the program unless "he finds that (1) such State program is not equivalent to the Federal program under this subchapter, (2) such program is not consistent with the Federal or State programs applicable in other States, or (3) such program does not provide adequate enforcement of compliance with the requirements of" RCRA. Id
 
 
 [2]
 This court affirmed the regional administrator's decision. See Hazardous Waste Treatment Council v. Reilly, 938 F.2d 1390 (D.C.Cir.1991)
 
 
 [3]
 The ALJ also ruled that even if the proceeding was an "adversary adjudication", EPA's position was "substantially justified," see 5 U.S.C. § 504(a)(1), and that, in any event, Friends was not entitled to attorneys fees in excess of the $75 per hour statutory limit. Recommended Decision On Application For Attorney's Fees And Other Expenses By The Environmental Policy Institute at 27-31
 
 
 [4]
 As we noted in St. Louis Fuel, a section 554 hearing includes the following procedural protections:
 an impartial and unbiased presiding officer, notice and opportunity to participate in the hearing, the right of the parties to appear with counsel, the right to present oral and written evidence (including rebuttal evidence) and to conduct such cross-examination as is required for a full and true disclosure of the facts, the right to submit proposed findings, conclusions and exceptions, the compilation of an exclusive record upon which the agency must base its decision, and limitations on ex parte communications and on the combination of prosecutorial and adjudicative functions.
 890 F.2d at 448 (internal citations omitted).
 
 
 [5]
 Withdrawal is also authorized when a state "program does not provide adequate enforcement of compliance with" RCRA. See 42 U.S.C. § 6926(e) (authorizing withdrawal when state program does not meet requirements of subsection 3006(b), 42 U.S.C. § 6926(b)). While a withdrawal proceeding based on a state's failure to provide adequate enforcement may involve issues of "adjudicative facts," we are not convinced that Congress intended to require section 554 hearings in all circumstances. Rather, the fairest interpretation of section 3006(e)'s hearing requirement is that Congress intended to give EPA the flexibility to decide what hearing procedures were necessary in a particular withdrawal proceeding
 
 
 [6]
 Our decision in Chemical Waste supports this conclusion. In Chemical Waste, we upheld EPA's interpretation of the "public hearing" requirement of section 3008(h), 42 U.S.C. § 6928(h), which governs RCRA corrective action orders, as not requiring formal or section 554 procedures. 873 F.2d at 1482-83. The hearing requirement of section 3008(h) uses the same language as section 3006(e)
 
 
 [7]
 We also reject Friends' argument that the ruling on a motion for a temporary stay of the withdrawal proceeding pending full disclosure of any ex parte contacts established as "law of the case" that the withdrawal proceeding was "governed by § 554 of the APA." Friends' Brief at 28-29. Friends' argument relies on a ruling of a single judge of the Fourth Circuit that "[t]he APA proscribes ex parte communications in connection with adjudicatory hearings such as the withdrawal proceedings here at issue. See 5 U.S.C. §§ 554(a), 556(a), 557(a), (d)(1)." Id. at 28 (quoting North Carolina v. EPA, 881 F.2d 1250, 1257 (4th Cir.1989)). Even assuming that a single judge acting on a motion for stay can bind a full panel, the law of the case doctrine applies only to issues decided expressly or "by necessary implication." Williamsburg Wax Museum v. Historic Figures, Inc., 810 F.2d 243, 250 (D.C.Cir.1987). A review of the ruling indicates that the judge did not expressly decide whether the withdrawal proceeding is subject to section 554. Nor can it be concluded that the issue was decided "by necessary implication." Id. As the judge noted, both section 557(d)(1) of the APA and EPA's own regulations prohibit ex parte contacts. North Carolina, 881 F.2d at 1257. Moreover, section 557(d)(1) applies to any hearing subject to section 556. See 5 U.S.C. § 557(a). Section 554 proceedings, however, are not the only hearings subject to section 556. See 5 U.S.C. § 556(a). Rulemaking hearings are also subject to section 556. Id.; see also 5 U.S.C. § 553(c)