# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AAGESON GRAIN & CATTLE; R
LAND, INC.; FAIRCHILD FARMS, INC.,
    *Plaintiffs-Appellees,*

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE,

    *Defendant-Appellant.*

No. 05-36172

D.C. No.
CV-05-00022-SEH

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
August 8, 2007—Seattle, Washington

Filed August 31, 2007

Before: William C. Canby, Jr., Cynthia Holcomb Hall, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

11163

**COUNSEL**

John S. Koppel (argued), William Kanter, Assistant United States Attorneys for the Civil Appellate Division for appellant United States Department of Agriculture.

Beth Angus Baumstark (argued), Sarah Voegl Law Firm, P.C., Bismarck, ND, and Floyd D. Corder, Corder & Allen, Great Falls, Montana, for appellees Aageson Grain & Cattle, et. al.

**OPINION**

CALLAHAN, Circuit Judge:

The United States Department of Agriculture ("USDA") appeals the district court's order remanding this case to the National Appeals Division ("NAD") of the USDA to determine eligibility for an attorney's fees and costs award under the Equal Access to Justice Act ("EAJA"). The farmers prevailed in their appeals before the NAD challenging their local Farm Service Agency's ("FSA") denials of claims under the 2003 Noninsured Crop Disaster Assistance Program ("NAP"). They then applied for attorney's fees under the EAJA, which the NAD denied on the ground that the EAJA is inapplicable to NAD proceedings. The farmers filed a petition for judicial review, and the district court ruled that the EAJA applies to NAD proceedings and remanded.

We affirm the judgment of the district court.

**FACTS**

Between March 17, 2004 and May 19, 2004, the Montana FSA denied the 2003 Noninsured Crop Disaster Assistance Program claims of Fairchild Farms, Inc., Aageson Grain and Cattle, and R Land, Inc. because it was Montana's policy that all perennial grasses were not covered during their first year. Each farm filed appeals with the NAD. The NAD consolidated their appeals for a hearing on October 27 and 28, 2004. At the hearing, the FSA was represented by two program specialists from the Montana FSA, Leonard McArthur, and Patricia Soares. On November 26, 2004, the Hearing Officer issued his decision overturning the FSA's denial of benefits to the farmers, concluding that the Montana policy "goes beyond being over-restrictive and actually avoids the requirement for NAP coverage." The FSA did not request review by the Director of the NAD, making the Hearing Officer's decision final on January 11, 2005.

The farms applied for an award of attorney's fees and expenses under the EAJA totaling $17,943.84. The NAD refused to consider the application, stating that "[i]t is the position of the Department of Agriculture that EAJA is inapplicable to NAD proceedings, except as otherwise required by judicial decision. Since the U.S. Court of Appeals for the 9th Circuit has not so required, NAD will not consider your application."

The farmers filed a petition for judicial review and both the farmers and the USDA filed cross-motions for summary judgment. The district court granted the farmers' motion for summary judgment, concluding that the NAD proceeding was an "adversary adjudication" under 5 U.S.C. § 504(a)(1) (2000). After entering judgment, the district court ordered the case remanded to the NAD for a determination of the proper attorney's fee and costs awards under the EAJA.

## JURISDICTION

Although the district court ordered a remand, for the purposes of this appeal, the district court's order was a final order under 28 U.S.C. § 1291 because "it determined a separable legal issue" of whether the EAJA applies. *Collord v. Dep't. of Interior*, 154 F.3d 933, 935 (9th Cir. 1998). Also, if the district court was wrong, its order would "result in a wasted proceeding applying an erroneous rule of law" and "review of the applicability of the EAJA to the proceeding might be foreclosed." *Id.*

## STANDARD OF REVIEW

This court reviews the district court's decision on the cross-motions for summary judgment de novo. *Parravano v. Babbitt*, 70 F.3d 539, 543 (9th Cir. 1995). "On appeal from the District Court, we review the NAD's decision de novo, and will uphold it unless we find it to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " *Deaf Smith Cty. Grain Processors, Inc. v. Glickman*, 162 F.3d 1206, 1213 (D.C. Cir. 1998) (internal citations omitted).

## DISCUSSION

The sole issue in this case is whether the EAJA applies to administrative hearings before the NAD. The USDA contends that a proceeding before the NAD is not held "under" the Administrative Procedure Act ("APA"), therefore the EAJA does not entitle the farmers to attorney's fees. The district court followed the Eighth Circuit's decision in *Lane v. USDA*, 120 F.3d 106, 108 (8th Cir. 1997), and found that the EAJA applied to proceeding before the NAD.

**A.   If an administrative adversary adjudication is "under section 554" of the APA, the EAJA applies.**

The EAJA states:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The EAJA is made applicable to administrative adjudications through section 504 of the Administrative Procedure Act ("APA"), which states in relevant part:

> An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.

5 U.S.C. § 504(a)(1). The APA defines an adversary adjudication as "an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise."[1] 5 U.S.C. § 504(b)(1)(C).

---

[1] Section 554 also excludes four specific categories of adjudications that do not apply to decisions by the NAD. 5 U.S.C. § 504(b)(1)(C)(i-iv). For the purposes of the APA, an "adjudication" is "agency process for the formulation of an order." 5 U.S.C. § 551(7). An "order" under the APA is "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." 5 U.S.C. § 551(6).

**[1]** Section 554 of the APA applies "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing."[2] 5 U.S.C. § 554(a). A proceeding is "under" § 554 if it is "subject to" or "governed by" that section." *Ardestani v. INS*, 502 U.S. 129, 135 (1991) (internal quotation marks and punctuation omitted). "Section 554 does not merely describe a type of agency proceeding; it also prescribes that certain procedures be followed in the adjudications that fall within its scope." *Id.* at 136.

## B.   The NAD is a statutorily created adjudicative body.

The NAD is the statutorily created means of appealing the administrative decisions of officers, employees, or committees of the USDA. *See* 7 U.S.C. §§ 6992-7002. Congress created the NAD in its current form as part of the reorganization of the USDA in 1994. *See Deaf Smith Cty.*, 162 F.3d at 1212-1213 (discussing history of the NAD). Within ten (10) working days after an adverse decision by the USDA, the agency must provide "written notice of such adverse decision and the rights available to the participant under this subchapter or other law for the review of such adverse decision." 7 U.S.C. § 6994. Section 6996 states that "a participant shall have the right to appeal an adverse decision to the Division for an evidentiary hearing by a hearing officer consistent with section 6997 of this title." 7 U.S.C. § 6996(a).

The requirements for conducting an NAD hearing are controlled by § 6997(c), which provides:

(1) Location

---

[2]There are six exceptions to applicability of section 554: 1) trials; 2) certain employment matters; 3) the results of inspections, tests, or elections; 4) the conduct of military or foreign affairs functions; 5) where the agency acts as an agent for a court; and 6) certification of worker representatives. *See* 5 U.S.C. § 554(a)(1-6). None of these exceptions apply in this case.

A hearing on an adverse decision shall be held in the State of residence of the appellant or at a location that is otherwise convenient to the appellant and the Division.

(2)   Evidentiary hearing

The evidentiary hearing before a hearing officer shall be in person, unless the appellant agrees to a hearing by telephone or by a review of the case record. The hearing officer shall not be bound by previous findings of fact by the agency in making a determination.

(3)   Information at hearing

The hearing officer shall consider information presented at the hearing without regard to whether the evidence was known to the agency officer, employee, or committee making the adverse decision at the time the adverse decision was made. The hearing officer shall leave the record open after the hearing for a reasonable period of time to allow the submission of information by the appellant or the agency after the hearing to the extent necessary to respond to new facts, information, arguments, or evidence presented or raised by the agency or appellant.

(4)   Burden of proof

The appellant shall bear the burden of proving that the adverse decision of the agency was erroneous.

The parties to an NAD proceeding may appeal the determination to the Director. 7 U.S.C. § 6998(a). Upon a timely request, "[t]he Director shall conduct a review of the determination of the hearing officer using the case record, the record from the evidentiary hearing under section 6997 of this title,

the request for review, and such other arguments or information as may be accepted by the Director." 7 U.S.C. § 6998(b). Once an agency determination becomes final, it "shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of title 5." 7 U.S.C. § 6999.

### C.     NAD proceedings are "under" APA § 554.

The USDA argues that the farmer's contest of the denial of benefits under the Disaster Assistance Program before the NAD was not an "adversary adjudication" because it was not "under" APA § 554, but a freestanding procedure not subject to the APA. Acknowledging that the Eighth Circuit held, in *Lane v. USDA*, that proceedings before the NAD were adversary adjudications governed by the APA, and therefore, that the EAJA applied, the USDA urges us to find that *Lane* was wrongly decided. The USDA concedes that the hearing officer's determination was a "final disposition" under APA § 551, and that NAD proceedings must be on the record.

> 1. A proceeding before the NAD is an adversary adjudication.

**[2]** The position of the USDA was represented before the NAD by two program specialists. Unlike administrative hearings where the United States does not have a formal position, such as proceedings before the Social Security Administration, in this NAD hearing, the Montana FSA defended its policy by sending two program specialists to testify and justify its position. *Compare Kelly v. Bowen*, 862 F.2d 1333, 1335-36 (8th Cir. 1998) (noting non-adversarial nature of SSA proceedings, but that proceedings could become adversarial if the agency takes a position). The legislative history of the EAJA also supports this position, stating, "[i]f, however, the agency does take a position at some point in the adjudication, the adjudication would then become adversarial." H.R.Rep. No. 1434, 96th Cong., 2d Sess. 23, *reprinted in* 1980 U.S. Code

Cong. & Admin. News 5003, 5012. In *Mahon v. USDA*, the Eleventh Circuit concluded that, in the case of a challenge to the denial of benefits under a disaster assistance program, a proceeding before the NAD was " 'adversarial' in nature." 485 F.3d 1247, 1256 (11th Cir. 2007). Proceedings before the NAD are therefore an adversarial adjudication as stated in APA § 504.

> 2. The statute creating the NAD satisfies the requirements for application of the APA.

Having determined that NAD proceedings are adversarial adjudications within the meaning of APA § 504, the remaining question is whether the proceedings are "under" APA § 554. Section 554 applies "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing." This requirement has three components: 1) the adjudication must be "required by statute"; 2) it must be "on the record"; and 3) there must be an "opportunity for an agency hearing." 5 U.S.C. § 554; *Portland Audubon Society v. Western Council of Ind. Workers*, 984 F.2d 1534, 1540 (9th Cir. 1993). The USDA does not contest that NAD hearings must be on the record or that it must provide an opportunity for an agency hearing. Rather, the USDA challenges whether application of APA § 554 to the NAD hearings is mandatory.

[3] In this case, NAD adjudications are compelled by 7 U.S.C. § 6996(a). The plain language of the statute states that "a participant *shall* have the right to appeal an adverse decision to the Division." 7 U.S.C. § 6996(a). In *Wong Yang Sung v. McGrath*, 339 U.S. 33, 50 (1950) (emphasis added), the Supreme Court concluded that "the limitation to hearings 'required by statute' in § 5 of the Administrative Procedure Act exempts from that section's application only those hearings which administrative agencies may hold by regulation, rule, custom, or special dispensation; not those held by compulsion." Therefore, the APA generally applies where an

administrative hearing is required by statute or the Constitution. *See Collord*, 154 F.3d at 936-37 (concluding that the EAJA applied to hearings held to determine mining rights under the General Mining Act because the hearings were required by the Due Process Clause).

In *Portland Audubon*, 984 F.2d at 1540, we decided that the APA "applies whenever the three requirements set forth in APA § 554(a) are satisfied: The administrative proceeding must be 1) an adjudication; 2) determined on the record; and 3) after the opportunity for an agency hearing." After analyzing subsection 7(h)(1)(A) of the Endangered Species Act (16 U.S.C. § 1536(h)(1)(A)), we concluded that all three requirements of APA § 554 were met, and therefore the prohibition of ex parte contacts in APA § 557 applied to proceedings before the Endangered Species Committee. *Id.* at 1540-41.

In this case, the statutes creating and implementing the NAD mandate each of the three procedural protections in APA § 554 (stating that the APA applies "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing."). Applying *Portland Audubon*, the NAD statutes require an adjudication (7 U.S.C. § 6997), on the record (7 U.S.C. §§ 6997(c), 6998(b)), and an opportunity for a hearing (7 U.S.C. §§ 6994, 6996). Therefore, under our caselaw, the provisions of the APA apply to proceedings before the NAD, and the EAJA applies because the proceedings occur "under" APA § 554.

> 3. The statutory scheme creating the NAD did not create a free-standing scheme.

The USDA argues that the NAD statutes create a separate and exclusive scheme that is excluded from application of the APA. In *Marcello v. Bonds*, 349 U.S. 302, 308-10 (1955), the Supreme Court noted that Congress, by passing the Immigration and Naturalization Act of 1952 ("INA"), specifically exempted immigration proceedings from application of the

APA. The Court concluded that language from section 242(b) of the INA stating that the proceedings "shall be the sole and exclusive procedure for determining the deportability of an alien under this section" showed a clear Congressional intent to exclude the deportation hearings from application of the APA. *Id.* at 309.

In contrast, nothing in the statutes creating and implementing the NAD states that the NAD shall be the "sole and exclusive" means of adjudicating issues with the USDA. The Court expressly followed *Marcello* in *Ardestani*, holding that the EAJA did not apply to deportation hearings because they were "not subject to the APA and thus not governed by the provisions of § 554." 502 U.S. at 134. In addition, the Court held "that the meaning of 'an adjudication under section 554' is unambiguous in the context of the EAJA," and that adjudications "under section 554" are those that "must be 'subject to' or governed by' § 554." *Id.* at 135. Nothing in *Ardestani* precludes us from concluding that NAD is subject to the ADA because it fulfills the three requirements of APA § 554.

> 4. *Lane v. USDA* is directly on point and was not wrongly decided.

The only court to consider the specific question presented in this case, the Eighth Circuit, concluded that the EAJA applies to proceedings before the NAD. *Lane v. USDA*, 120 F.3d at 109. The Eighth Circuit based its decision on a finding "that the EAJA is under § 554 of the APA because all three prerequisites for coverage have been satisfied. NAD proceedings are: 1) adjudications; 2) there is an opportunity for a hearing; and 3) the hearing must be on the record." *Id.* This is the same standard applied by this court in *Portland Audubon*. *Compare Portland Audubon*, 984 F.2d at 1540 (concluding that the APA "applies whenever the three requirements set forth in APA § 554(a) are satisfied: The administrative proceeding must be 1) an adjudication; 2) determined on the record; and 3) after the opportunity for an agency hearing.").

Therefore, the district court was correct to follow *Lane* and conclude that the EAJA applies to proceedings before the NAD.

The court in *Lane* distinguished *Marcello* and *Ardestani* by noting that APA § 559 states that a subsequent statute may not be held to supersede or modify this subchapter "except to the extent that it does so expressly." 120 F.3d at 109 (quoting 5 U.S.C. § 559). It also cited the Supreme Court's analysis of the legislative history, differences between the APA and the INA provisions, and the express statement that the deportation hearings would be the "sole and exclusive procedure for determining the deportability of an alien under this section." *Id.* at 110 (citing *Marcello*, 349 U.S. at 309). *Lane* does not conflict with *Marcello* or *Ardestani* because neither case states that a statute that satisfies the three requirements of APA § 554 automatically creates a freestanding administrative scheme exempt from the EAJA.

**[4]** The EAJA is a waiver of sovereign immunity. Any waivers of sovereign immunity "must be strictly construed in favor of the United States." *Ardestani*, 502 U.S. at 137. Even *Ardestani* acknowledged, however, that the Supreme Court has "recognized that, once Congress has waived sovereign immunity over certain subject matter, the Court should be careful not to 'assume the authority to narrow the waiver that Congress intended.' " *Id.* (quoting *United States v. Kubrick*, 444 U.S. 111, 118 (1979)). The statute creating the NAD, 7 U.S.C. § 6999, provides that "[a] final determination of the Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of title 5 [the APA]." By providing for the three procedural safeguards from APA § 554, and explicitly providing for judicial review pursuant to the provisions of the APA, it appears that Congress intended for NAD proceedings to be "under" the APA, and we shall not assume the authority to narrow Congress's waiver of sovereign immunity under the

EAJA. Therefore, *Lane* was not wrongfully decided and the district court properly relied upon it as persuasive precedent.

>   5.   The decisions of the D.C. Circuit do not compel a different result.

The USDA relies heavily on *St. Louis Fuel & Supply Co., Inc. v. FERC*, 890 F.2d 446, 448-49 (D.C. Cir. 1989), where the D.C. Circuit decided that "[w]hat counts is whether the statute indicates that Congress intended to *require* full agency adherence to all section 554 procedural components." After analyzing section 7193(c) of the Department of Energy Organization Act (42 U.S.C. § 7193(c)), which required a "hearing," on contests of remedial orders, the court concluded that the statute's omission of the requirement that hearings be "on the record" meant that Congress did not intend the APA to apply.[3] *Id*. The D.C. Circuit also suggested in dicta that a proceeding is "under" § 554 if it provides all of the procedural protections in Chapter 5 of Title 5, including notice and opportunity, the ability to present evidence, and to conduct cross-examination. *Id*. at 448. These protections were not mandated by 42 U.S.C. § 7193(c), however, and some of the rights were discretionary. *See id*. (stating right to cross-examination is discretionary).

The Supreme Court cited *St. Louis Fuel* with approval in *Ardestani*. *Ardestani*, 502 U.S. at 135. The D.C. Circuit followed *St. Louis Fuel* in *Friends of Earth v. Reilly*, 966 F.2d 690, 693 (D.C. Cir. 1992), again concluding that the EAJA did not apply because the withdrawal proceeding mandated by

---

[3]42 U.S.C. § 7193(c) states in relevant part:

>   The Commission shall, upon request, afford an opportunity for a hearing, including, at a minimum, the submission of briefs, oral or documentary evidence, and oral arguments. To the extent that the Commission in its discretion determines that such is required for a full and true disclosure of the facts, the Commission shall afford the right of cross examination.

Resource Conservation and Recover Act's 42 U.S.C. § 6926(e) did not provide for any process other than a "public hearing."[4] Furthermore, the D.C. Circuit reiterated its view that regulations that added "protections matching those of" the APA are irrelevant to the analysis of whether a proceeding is "subject to" § 554. *St. Louis Fuel*, 890 F.2d at 449.

The fact that 7 U.S.C. §§ 6991-7001 satisfies all three of the statutory requirements in APA § 544 distinguishes the NAD proceedings from the less formal proceedings analyzed in *St. Louis Fuel* and *Friends of Earth*. Congress is free to create informal adjudicatory procedures that do not require the full procedural protections of the APA, and therefore do not waive sovereign immunity from attorney's fees and costs under the EAJA. *See St. Louis Fuel*, 890 F.2d at 449 (discussing legislative history and specific intent of Congress to provide minimal due process and not the full hearing afforded by the APA). Congress may also create special dispensations from the application of the APA, or specify and modify APA procedures so much that the statutory scheme is not "under" the APA. *See Marcello*, 349 U.S. at 308-10; *Wong Yang Sung*, 39 U.S. at 50. In the absence of such exceptional congressional action, however, where Congress mandates that an adjudicative process provide the three procedural protections stated in APA § 554, we give credence to its statement that the APA applies when the requirements are met and conclude that the proceeding is "under" APA § 554.

---

[4]42 U.S.C. § 6926(e) states:

Whenever the Administrator determines after public hearing that a State is not administering and enforcing a program authorized under this section in accordance with requirements of this section, he shall so notify the State and, if appropriate corrective action is not taken within a reasonable time, not to exceed ninety days, the Administrator shall withdraw authorization of such program and establish a Federal program pursuant to this subchapter. The Administrator shall not withdraw authorization of any such program unless he shall first have notified the State, and made public, in writing, the reasons for such withdrawal.

### D.   Application.

The USDA conceded in the district court that the farmers were prevailing parties before the NAD. In addition, we note that the NAD hearing officer found that the Montana FSA's policy "goes beyond being over-restrictive and actually avoids the requirement for NAD coverage" and thus the district court correctly found that the position of the United States was not substantially justified. We affirm the district court's order stating that the "Plaintiffs are entitled to an award of reasonable fees and costs" and ordering this case to be remanded to the NAD for consideration of the farmers' requests under 5 U.S.C. § 504.

### CONCLUSION

The statutory scheme that creates and implements the NAD satisfies all three procedural protections stated in APA § 554. As a result, adversarial proceedings before the NAD are "subject to" APA § 554, and the EAJA applies. **AFFIRMED**.