# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 07-3406

FIVE POINTS ROAD JOINT VENTURE, an
Illinois general partnership, JOHN
BAENZIGER, CINDY BAENZIGER, et al.,

*Plaintiffs-Appellees,*

*v.*

MICHAEL O. JOHANNS, Secretary
of Agriculture, United States
Department of Agriculture, Office
of Secretary, and ROGER KLURFELD,
Director, National Appeals
Division, a Division of the United
States Department of Agriculture,

*Defendants-Appellants.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 06 C 50145—**Frederick J. Kapala**, *Judge.*

_____

ARGUED APRIL 7, 2008—DECIDED SEPTEMBER 8, 2008

_____

Before RIPPLE, WILLIAMS and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge*.  In April 2005, the Farm Service Agency, an agency of the United States Department of Agriculture ("USDA"), ordered the plaintiffs (collectively, "Five Points") to refund certain benefits that they had received from it. Five Points appealed the decision to the National Appeals Division ("NAD"), which reversed the Farm Service Agency's determination in its entirety. Five Points then applied to the NAD for attorney's fees and costs under the Equal Access to Justice Act, 5 U.S.C. § 504 ("EAJA"), but the NAD denied the request on the ground that the EAJA did not apply to NAD adjudications. Five Points petitioned for review of the agency's denial of its EAJA request to the district court.[1] The district court held that the EAJA did apply to NAD adjudications and remanded for consideration of whether the requirements of the EAJA were met in this case. The Government now appeals the decision of the district court.[2]

For the reasons stated in this opinion, we affirm the judgment of the district court.

---

[1] The district court had jurisdiction under 7 U.S.C. § 6999 to review the National Appeals Division Director's determination.

[2]  We have jurisdiction over this appeal under 28 U.S.C. § 1291. *See Aageson Grain & Cattle v. USDA*, 500 F.3d 1038, 1040-41 (9th Cir. 2007); *see also Fortney v. Apfel*, 524 U.S. 266 (1998); *Sullivan v. Finklestein*, 496 U.S. 617 (1990); *Horn Farms, Inc. v. Johanns*, 397 F.3d 472 (7th Cir. 2005).

# I

## BACKGROUND

In April 2005, the Farm Service Agency, an agency of the USDA, ordered Five Points to refund certain federal farm program benefits that it had received for the years 2003 and 2004. Five Points appealed that decision to an NAD hearing officer. The hearing officer reversed the Farm Service Agency's determination in its entirety. The Director of the NAD then affirmed the hearing officer's decision in favor of Five Points.

Following its successful appeal of the merits of its dispute, Five Points applied to the NAD Director for attorney's fees and costs under the EAJA, 5 U.S.C. § 504. The NAD Director denied Five Points' application because, in the Director's view, the EAJA did not apply to NAD adjudications. Five Points' request for reconsideration also was denied by the Director. Five Points sought review of that determination in the district court.

In the district court, Five Points and the Government filed cross-motions for summary judgment. Following the decision of the Eighth Circuit in *Lane v. USDA*, 120 F.3d 106 (8th Cir. 1997), the reasoning of which also was applied by the Ninth Circuit in *Aageson Grain & Cattle v. USDA*, 500 F.3d 1038 (9th Cir. 2007), it held that proceedings before the NAD are subject to the EAJA. The district court therefore granted Five Points' motion for summary judgment; it held that the NAD proceedings were "under" section 554 of the Administrative Procedure Act of 1946, 5 U.S.C. § 701 et seq. ("APA"), and that the plaintiffs, as the prevailing party in the agency pro-

ceeding, were entitled to attorney's fees and costs under the EAJA. The Director had erred, therefore, in refusing to consider the plaintiffs' application. The case was remanded to the agency for appropriate consideration of Five Points' application under the EAJA. The Government appealed.

## II

## DISCUSSION

We review de novo the district court's grant of summary judgment. *Foskett v. Great Wolf Resorts, Inc.*, 518 F.3d 518, 522 (7th Cir. 2008). On cross-motions for summary judgment, we construe all facts and inferences therefrom in favor of the party against whom the motion under consideration was made. *Id.* Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." *Id.*; Fed. R. Civ. P. 56(c).

This case presents a single issue: whether the EAJA applies to administrative proceedings before the NAD. This issue presents a question of statutory interpretation.[3]

---

[3] In an introductory section of its brief, the Government urges us to keep in mind principles of sovereign immunity in interpreting the statutes at issue. It contends that the EAJA should not be interpreted as applying to proceedings conducted under the NAD because "[t]he EAJA renders the United States liable for attorney's fees for which it would not otherwise be

(continued...)

The EAJA "provides that prevailing parties in certain adversary administrative proceedings may recover attorney's fees and costs from the Government." *Ardestani v. INS*, 502 U.S. 129, 132 (1991). In pertinent part, the EAJA states:

> An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.

5 U.S.C. § 504(a)(1); *see also Ardestani*, 502 U.S. at 132. The EAJA defines an "adversary adjudication" as "an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise." 5 U.S.C. § 504(b)(1)(C)(i). Here, the Government

---

[3] (...continued)
liable, and thus amounts to a partial waiver of sovereign immunity." *Ardestani v. INS*, 502 U.S. 129, 137 (1991). The Government contends, rightly, that "[a]ny such waiver must be strictly construed in favor of the United States." *Id.* Nevertheless, "once Congress has waived sovereign immunity over certain subject matter, [a court] should be careful not to 'assume the authority to narrow the waiver that Congress intended.'" *Id.* (quoting *United States v. Kubrick*, 444 U.S. 111, 118 (1979)). As we point out in our statutory analysis, here, Congress expressly has waived sovereign immunity with respect to attorney's fees and costs to a prevailing party in an adversarial adjudication under section 504.

concedes that it was represented by counsel in the appeal before the NAD; the only question, then, is whether an NAD proceeding is "an adjudication under section 554." *Id.*

Section 554 of Title 5 delineates the scope of proceedings governed by the formal adjudication requirements of the APA. *See Ardestani*, 502 U.S. at 132-33. By its terms, section 554 "applies . . . in every case of an adjudication required by statute to be determined on the record after opportunity for an agency hearing."[4] 5 U.S.C. § 554(a). An adjudication is defined as an "agency process for the formulation of an order." 5 U.S.C. § 551(7). Section 554 therefore will apply if the proceeding meets three requirements: (1) there must be an adjudication, an agency

---

[4] There are five exceptions to this definition, none of which are at issue here; specifically, section 554 does not apply

to the extent there is involved—

(1) a matter subject to a subsequent trial of the law and the facts de novo in a court;

(2) the selection or tenure of an employee, except a [sic] administrative law judge appointed under section 3105 of this title;

(3) proceedings in which decisions rest solely on inspections, tests, or elections;

(4) the conduct of military or foreign affairs functions;

(5) cases in which an agency is acting as an agent for a court; or

(6) the certification of worker representatives.

5 U.S.C. § 554(a).

process for the formulation of an order, that is required by statute; (2) it must be on the record; and (3) there must be an opportunity for an agency hearing. *Id.* § 554; *Aageson*, 500 F.3d at 1043.

The review of agency determinations by the NAD clearly meets the definition of an adjudication, the first criterion. The governing statute provides for a hearing to determine disputed facts and requires that, after that hearing, the hearing officer must issue a determination. 7 U.S.C. § 6997. The NAD statutes also meet the third section 554 requirement: that there be an opportunity for a hearing. Such a hearing is mandatory once requested by a participant. 7 U.S.C. § 6997(b); *cf. Smedberg Mach. & Tool, Inc. v. Donovan*, 730 F.2d 1089, 1092-93 (7th Cir. 1984) (holding that section 554 is inapplicable to a proceeding that "gives the administrative law judge the discretion rather than the obligation to conduct a review hearing").

The only remaining requirement for a proceeding to be under section 554 is that it must be on the record. The NAD statutes do not require expressly the hearing to be on the record; nonetheless, Congress' intent is clear. "Although Section 554 specifies that the governing statute must satisfy the 'on the record' requirement, those three magic words need not appear for a court to determine that formal hearings are required." *City of W. Chicago, Ill. v. U.S. Nuclear Regulatory Comm'n*, 701 F.2d 632, 641 (7th Cir. 1983). Congress need only "clearly indicate its intent to trigger the formal, on-the-record hearing provisions of the APA." *Id.*

Here, Congress has indicated clearly its intent to trigger the formal hearing provisions of the APA. *See id.* The NAD statutes provide that a participant who appeals an adverse decision shall be given an evidentiary hearing. 7 U.S.C. § 6996(a). The evidentiary hearing consists of a procedure in which the hearing officer has the power to administer oaths and to subpoena witnesses and evidence. *Id.* § 6997(a)(2). The hearing officer and interested parties are prohibited from ex parte communications. *Id.* § 6997(a)(2)(A)-(B). The hearing officer is not bound by prior factual findings. *Id.* § 6997(c)(2). The appellant carries the burden of proving that the agency's decision was erroneous, *id.* § 6997(c)(4), and the hearing officer must leave the record open for additional information in response to new facts and evidence presented at the hearing, *id.* § 6997(c)(3). The appellant or the agency may request that the Director review the hearing officer's determination. *Id.* § 6998(a). The Director's review is based on the case record (all material related to the adverse decision), *id.* § 6991(4), the record from the evidentiary hearing under 7 U.S.C. § 6997 and any other arguments or evidence that the Director chooses to accept. *Id.* § 6998(b). Judicial review is available upon issuance of a final determination. *Id.* § 6999.

The language of the text, especially the repeated references to the record and the provision for trial-type procedures, as well as the structure of the NAD statutes, makes clear that Congress intended for NAD proceedings to be governed by section 554 of the APA. *Lane*, 120 F.3d at 109. Indeed, the Government concedes that NAD proceedings are "on the record." Appellants' Br. at 15

("7 U.S.C. §§ 6996-6998 required the hearing officer's decision to be on the record.").

The Government nevertheless contends that, despite meeting the statutory definition for proceedings to which the EAJA applies, an administrative appeal proceeding before the NAD is *not* one to which the EAJA applies because it is a "comprehensive, freestanding scheme that supersedes 5 U.S.C. § 554." Appellants' Br. at 16 (comparing 7 U.S.C. § 6997(a)(2)(A) with 5 U.S.C. § 554(d)). In essence, the Government argues that the NAD statutes have amended by implication section 554 of the APA, despite the language in section 554 that makes it applicable to *all* adjudications required by statute to be determined on the record after an opportunity for an agency hearing.

As our colleagues in the Eighth Circuit have pointed out, "[t]he primary flaw in the agency's argument is that the APA specifically states that a 'subsequent statute may not be held to supersede or modify this subchapter . . . except to the extent that it does so expressly.'" *Lane*, 120 F.3d at 109 (quoting 5 U.S.C. § 559). There is nothing in the NAD statutes that expressly states that the APA is inapplicable. *See id.* "By adopting [section] 559, Congress made it clear that the APA would apply *unless* there was some expression by Congress that the APA was being superseded." *Id.* (emphasis added). Section 559 therefore prevents a statute from amending the APA by implication. *Id.* In enacting section 559, Congress adopted a reasonable approach to ensure that, given the variety of issues and forums covered by the APA, Congress

would not adopt inadvertently a provision that conflicted with the APA or repeat a provision contained in the APA. *Id.*; *Aageson*, 500 F.3d at 1045. Indeed, any variation here between the NAD procedures and those in the APA merely "highlight[s] the confusion that would occur[ ] but for § 559[,] which forbids amendments of the APA by implication." *Lane*, 120 F.3d at 110.

As the Eighth Circuit made very clear, the situation before us here is not controlled by the Supreme Court's decision in *Marcello v. Bonds*, 349 U.S. 302 (1955). There, the Supreme Court held that the APA did not apply to deportation hearings because, in crafting deportation procedures, Congress had departed from the procedures of the APA and had created different and unique procedures to govern those proceedings. None of the variations from the APA in the NAD statutes are of the magnitude described in *Marcello*. These deviations simply provide no basis for holding, in the face of the Supreme Court's warning in *Marcello*, that "[e]xemptions from the terms of the [APA] are not lightly to be presumed." *Id.* at 310. Nor are they sufficient to justify holding, in the face of section 559, that the NAD is a freestanding scheme. *See Lane*, 120 F.3d at 110; *cf. W. Chicago*, 701 F.2d at 641 (noting that if the proceeding was one "under section 554," then it must conform with section 554's requirements "despite [the Nuclear Regulatory Commission's] interpretation of the regulations").

The Government also contends that the holdings in *Ardestani* and *Marcello* foreclose the possibility that an NAD proceeding is one "under section 554." The Gov-

ernment submits that the statute creating the NAD must state unambiguously that the NAD proceeding is subject to section 554 or the EAJA for the proceeding to qualify as one "under" section 554.

This understanding of *Ardestani* and *Marcello* was rejected by the Eighth and Ninth Circuits in precisely the circumstances before this court. Our sister circuits held that section 554 applies to *any* proceeding that is "required by statute to be determined on the record after opportunity for an agency hearing," 5 U.S.C. § 554, unless a subsequent statute *expressly* opts out of the EAJA, *see* 5 U.S.C. § 559. We agree. *Marcello* simply held that the Immigration and Nationality Act ("INA") *did* create expressly a proceeding that was entirely separate from section 554; the Supreme Court so held because the INA states that it "shall be the *sole* and *exclusive* procedure for determining deportability of an alien." *Ardestani*, 502 U.S. at 519. *Ardestani* held that the mere incorporation by the INA of some of the APA proceedings was insufficient, in the face of the express statement in the INA that it was entirely an separate proceeding, to make the INA proceeding one "under" section 554. *Id.* at 519-20. The decisions of our sister circuits, which we follow today, are entirely consistent with the Supreme Court's holdings in these cases; the Court simply concluded that section 554 did not apply to the INA even if the INA otherwise met the conditions in section 554 because Congress had exempted expressly the INA from it. Here, by contrast, no such express statement in the NAD exempts its proceedings from section 554 and the APA. *Aageson*, 500 F.3d at 1044.

Additionally, the Government's understanding of *Ardestani* conflicts with this court's precedents regarding the application of section 554 to a particular proceeding. *See W. Chicago*, 701 F.2d at 641. In *West Chicago*, this court considered whether section 554 applied to a hearing provided by the Nuclear Regulatory Commission. The statute provided that the "Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding." *Id.* Although the outcome in *West Chicago* differed from that in *Aageson* and *Lane*, this court engaged in the same analysis. We held that a hearing was required by the statute, leaving only the third element—whether the hearing was "on the record"—in dispute. *Id.* The opinion concluded that formal hearings, or hearings on the record, were not required by the statute, and therefore that section 554 did not apply to the proceedings. *Id.* In essence, we engaged in precisely the inquiry that was conducted by the Ninth Circuit in *Aageson* and by the Eighth Circuit in *Lane*; we did not, however, examine whether the statute creating the hearing unambiguously stated that it was subject to section 554 or the EAJA, as the Government suggests is required by *Ardestani*.[5]

---

[5] As a fall-back position, the Government submits that the result reached in *Lane* and *Aageson* conflicts with two cases from the District of Columbia Circuit, which held that a proceeding was not "under section 554" even though the proceeding was not excluded expressly from the APA. *See Friends of the Earth v. Reilly*, 966 F.2d 690 (D.C. Cir. 1992); *St. Louis Fuel & Supply Co. v.*

(continued...)

The Government also points to the legislative history of the NAD statutes, which, it contends, supports its conclusion that the NAD is not "under" the APA. It submits that one version of the NAD statutes would have stated expressly that the NAD was under section 554, but the final version omitted that language. Resort to the legislative history, however, is only necessary if the language of the statue is ambiguous; if the statutory language is clear, then the legislative history is only relevant if it shows a clear intent to the contrary. *See United States v. Shriver*, 989 F.2d 898, 901 (7th Cir. 1992). Here, there is no ambiguity that requires resort to the legislative history. Moreover, the legislative history to which the Government points does not create the clear intent, contrary to the express language of the statute, that is necessary to overcome a clear statute. *See id.* at 902-03. In light of the statutory scheme as a whole, specifically considering section 559, the legislative history does not clearly contradict the express statutory language. *See id.* at 903.

---

[5] (...continued)
*FERC*, 890 F.2d 446 (D.C. Cir. 1989). In those cases, however, as in *West Chicago*, the holdings were based on a determination that the requirements of section 554 were not met at the outset: the proceedings at issue did not require formal hearings "on the record," and therefore they did not meet the standard for a proceeding "under section 554." *See Friends of the Earth*, 966 F.2d at 693; *St. Louis*, 890 F.2d at 448. The case before us, however, meets the statutory requirements for proceedings "under section 554"; this case is therefore distinguishable from *St. Louis Fuel* and *Friends of the Earth*.

The Government takes its legislative history analysis a step further. It points to the national budget preparation process as evidence that Congress did not intend section 554, and thus the EAJA, to apply to the NAD. It submits that approximately 13,000 appeals are docketed annually with the NAD, yet the Congressional Budget Office's cost estimates do not include potential EAJA costs. The Government does not rely on any source of authority for the proposition that budget estimates can overcome statutory language or influence a court's statutory interpretation, however, and we see no reason in this case to be persuaded by them.

## Conclusion

A proceeding before the NAD is an "adjudication required by statute to be determined on the record after opportunity for an agency hearing." *See* 5 U.S.C. § 554(a); *see also Aageson*, 500 F.3d at 1045; *Lane*, 120 F.3d at 109. The NAD does not establish a freestanding scheme of the sort that prevents it from being governed by the APA. *See* 5 U.S.C. § 559. Therefore, the EAJA applies to proceedings before the NAD. *Id.* § 504. For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED