James J. FOSKETT, Mary Christine Foskett and Physicians' Benefits Trust Life Insurance Company, Plaintiffs,

v.

GREAT WOLF RESORTS, INC. and Great Bear Lodge of Wisconsin Dells, LLC, and Great Lakes Services, LLC, Defendants and Third–Party Plaintiffs,

v.

Ineuman Pools, Inc., Water Technology, Inc., Proslide Technology Inc., Liberty Surplus Insurance Corporation, Lexington Insurance Company, National Surety Corporation, Black Wolf Lodge, LLC, Tall Pines Rental LLC, Real Estate Venture LLC, Tall Pines Realty, LLC, Tall Pines Development of Wisconsin Dells, LLC, Architectural Design Consultants, Inc. and Planning Design Build, Inc., Third–Party Defendants.

No. 06–C–503–S.

United States District Court,
W.D. Wisconsin.

April 24, 2007.

Mary C. Turke, Michael Best & Friedrich, LLP, Madison, WI, for Defendants.

## ORDER

SHABAZ, District Judge.

Plaintiff James Foskett ("plaintiff"), his wife and insurer commenced this personal injury action against defendant Great Wolf Resorts, Inc., Great Bear Lodge of Wisconsin Dells, LLC, and Great Lakes Services, LLC (collectively "Great Wolf") alleging that he was injured on a slide at Great Wolf's water park. Defendant Black Wolf Lodge, LLC, Tall Pines Rental LLC, J & A Real Estate Venture LLC, Tall Pines Realty, LLC, and Tall Pines development of Wisconsin Dells, LLC (collectively "Black Wolf"), prior owners of the property who sold it to Great Wolf, were joined by Great Wolf on a contributory negligence theory. Black Wolf asserted a cross claim for indemnification against Great Wolf based on provisions in the water park purchase agreement between the parties. Plaintiffs settled with all defendants leaving only the indemnification claim between Great Wolf and Black Wolf remaining in the action. The matter is presently before the Court on cross motions for summary judgment on that claim. The following facts relevant to the indemnification claim are undisputed.

## FACTS

Prior to 1999 Black Wolf developed property in Lake Delton Wisconsin into a water park resort. In November 1999 Great Wolf purchased the water park resort from Black Wolf. The purchase agreement included the following relevant provisions:

2. ASSUMPTION OF LIABILITIES

... Subject to the terms and conditions of this agreement, on the Closing Date, Buyer shall assume and agree to perform and discharge the following, and only the following, Liabilities of Seller ...:

2.1 *Liabilities to be Assumed.*
* * *

2.1.(a) *Furniture, Fixture and Equipment Orders.* Sellers' obligations to purchase furniture, fixtures and equipment on order as on the Closing Date.

2.1.(b) *Contractual Liabilities.* Sellers' Liabilities relating to the period beginning with the Closing Date under and pursuant to the Contracts.

2.1.(c) *Liabilities Under Permits and Licenses.* Sellers' Liabilities arising on and after the Closing Date under any permits or licenses listed in *Schedule 4.9.(b)* and assigned to Buyer at the Closing.

2.1.(d) *Prorated Liabilities.* Liabilities of Sellers for which Buyer receives a credit against the Purchase Price (as defined below) at Closing.

2.2 *Liabilities Not to be Assumed.*

Except as and to the extent specifically set forth in Section 2.1, Buyer is not assuming any Liabilities of Sellers and all such Liabilities shall be and remain the responsibility of Sellers. Without limiting the generality of the foregoing sentence, Buyer is not assuming and Sellers shall not be deemed to have transferred to Buyer the following Liabilities of Sellers, except to the extent specifically set forth in Section 2.1:

\* \* \*

2.2.(e) *Violation of Laws or Orders.* Liabilities of Sellers for any violation of or failure to comply with any applicable statute, law, ordinance, rule or regulation (collectively, "Laws") or any order, writ, injunction, judgment, plan or decree (collectively, "Orders") of any court, arbitrator, department, commission, board, bureau, agency, authority, instrumentality or other body, whether federal, state, municipal, foreign or other (collectively, "Government Entities").·

\* \* \*

## 10. INDEMNIFICATION

### 10.1 *By Sellers.*

Subject to the terms and conditions of this Section 10, Sellers shall, jointly and severally, indemnify, defend and hold harmless Buyer ... from and against all Claims incurred by Buyer ... by reason of or resulting from:

\* \* \*

10.1.(d) any Claim of or against Buyer, the Purchased Assets or the Business resulting from acts, omissions or events occurring prior to the Closing Date, and not specifically assumed by Buyer pursuant to this Agreement.

\* \* \*

### 10.2 *By Buyer.*

Subject to the terms and conditions of this Section 10, Buyer shall indemnify, defend and hold harmless Sellers ... from and against all Claims incurred by any such person by reason or resulting from: ... (c) any Claim of or against Sellers ... resulting from acts, omissions or events occurring on or after the Closing Date, except for Claims described in Sections 10.1.(e) or 10.1.(g);

Plaintiff alleged that on August 11, 2005 he was injured while using the Tree Wolf tube slide and plunge pool at the water park. The Tree Wolf slide and plunge pool were part of the property at the time Great Wolf Purchased it and were not subsequently modified. Plaintiff alleged that the Tree Wolf slide and plunge pool were unsafe as designed and violate Wisconsin Department of Commerce regulations. Great Wolf filed a third party complaint seeking contribution from Black Wolf to the extent its negligence, including any negligence relating to the design construction, installation, inspection and/or maintenance of the Tree Wolf slide, proximately caused plaintiff's injury. Subsequently, other defendants filed similar contribution claims against Black Wolf. Black Wolf counterclaimed against Great Wolf for indemnification pursuant to § 10.2 of the purchase agreement.

## MEMORANDUM

Black Wolf and Great Wolf each move for summary judgment on the indemnification claim, advancing different interpretations of the indemnification provision. Great Wolf argues that the claim results from acts or omissions—the failure to properly design, construct and inspect the pool—which occurred before the closing date and is therefore not covered by § 10.2. Black Wolf argues that it is entitled to indemnification because the claim results from an "event"—the Foskett injury—which occurred after the closing date. Black Wolf further argues that it is enti-

tled to prevail because there is no evidence that it was negligent with respect to the pool at any time.

Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions and the Court has reviewed such evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. A fact is material only if it might affect the outcome of the suit under the governing law. Disputes over unnecessary or irrelevant facts will not preclude summary judgment. A factual issue is genuine only if the evidence is such that a reasonable factfinder, applying the appropriate evidentiary standard of proof, could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under Rule 56(e) it is the obligation of the nonmoving party to set forth specific facts showing that there is a genuine issue for trial.

■ Resolution of the motions depends primarily on the interpretation of the indemnification provision. The purpose of contract interpretation is to ascertain the intention of the parties. *State ex rel. Journal/Sentinel, Inc. v. Pleva,* 155 Wis.2d 704, 711, 456 N.W.2d 359 (1990). The construction of a written contract is generally a question of law and where the terms of a contract are plain and unambiguous they must be given their plain meaning. *Teacher Retirement System of Texas v. Badger XVI Limited Partnership,* 205 Wis.2d 532, 555, 556 N.W.2d 415 (1996). Where there is no factual dispute concerning the extrinsic evidence, the contract may be interpreted as a matter of law even though the contractual language itself may be ambiguous. *Walgreen Co. v. Sara*

*Creek Property Co.,* 775 F.Supp. 1192, 1195 (E.D.Wis.1991).

■ Viewing the language of the contract in the context of the entire agreement, it is apparent that the language does not require, and the parties did not intend to require, Great Wolf to indemnify Black Wolf for claims based on Black Wolf's alleged negligent conduct prior to the sale. The most reasonable understanding of the phrase "resulting from acts, omissions or events occurring on or after the Closing Date" refers to conduct of the parties themselves which becomes the basis for a claim. That is, Great Wolf is bound to indemnify Black Wolf for claims against Black Wolf based on actions of Great Wolf after closing, but is not obligated to indemnify Black Wolf for claims based on Black's Wolf's own pre-closing conduct. Such an interpretation reasonably allocates risk to the parties for their own conduct.

This interpretation is entirely consistent with other terms of the agreement. For example, under section 2 of the agreement Buyer assumes liabilities for contracts, permits, and licenses entered on or after the closing date, but expressly does not assume liability for Seller's pre-closing obligations. It is reasonable that seller would indemnify Buyer for claims arising from Seller's pre-closing conduct, which it does in § 10. 1(d), and that Buyer would indemnify Seller for claims arising from Buyer's post-closing conduct in § 10.2. The two parallel indemnification provisions dovetail with the assumption and non-assumption of liability provisions.

■ Furthermore, this interpretation of the agreement is consistent with the legal presumption that a party generally does not indemnify another against claims based on the indemnitee's own negligent conduct. *Barrons v. J.H. Findorff & Sons, Inc.,* 89 Wis.2d 444, 453, 278 N.W.2d 827 (1979).

The agreement will be broadly construed where indemnity is sought for liability based on the indemnitor's negligence but will be strictly construed where the indemnitee is the negligent party. The court will not allow an indemnitee to be indemnified for his own negligent acts absent a clear and unequivocal statement to that effect in the agreement. However, in the absence of such specific language the court will construe the agreement to provide such indemnity if that is the only reasonable construction.

*Id.* (internal citations omitted). Here, the language at issue and the entire agreement are consistent with the general presumption that indemnification provisions do not apply to indemnify a party from liability arising from claims based on the indemnitee's own allegedly negligent conduct. Far from being the only reasonable construction, indemnification by Great Wolf for claims against Black Wolf based on Black Wolf's own conduct is inconsistent with the language of the purchase agreement.

Black Wolf's proffered interpretation, that Buyer must indemnify Seller for claims arising from Seller's pre-closing conduct, is unreasonable and inconsistent with the other provisions of the agreement. In § 2.2(e) Buyer expressly does not assume liability for Seller's pre-closing failures to comply with any applicable laws or regulations, the exact basis for the claim involved here. Buyer having expressly not assumed liability for pre-closing violations, it would be absurd that Buyer would indemnify Seller against claims based on such violations.

Black Wolf cites two provisions of the purchase agreement, § 4.10(b) and § 10.5, as consistent with its interpretation. Neither of these provisions requires or supports its interpretation. Section 4.10(b) is an "as is" limitation of warranties for assets involved in the sale. However, that limitation is prefaced with the phrase "except as expressly set forth in this Agreement," thereby negating any argument that the "as is" provision altered the allocation of liabilities and duties to indemnify specifically set forth in the sections discussed above. Section 10.5(a), an eighteen month contractual limitations period on Black Wolf's liability to indemnify Great Wolf, is entirely consistent with allocation of liability and duty to indemnify based on each party's conduct. The fact that Black Wolf's indemnification obligation ends at eighteen months implies that thereafter the indemnification obligation switches to Great Wolf.

Finally, there is no basis for Black Wolf's assertion that the indemnification provisions are dependent on actual proof of negligent conduct. The indemnification provisions apply to claims based on alleged conduct, whether or not those claims are ultimately successful. This is evident in § 10.3 which requires the indemnifying party to defend against claims subject to indemnification. Such a provision is inconsistent with a standard where the duty to indemnify hinges on the ultimate success of the claim. The obligation to Indemnify is dependent on the nature of the claim, not on the ultimate proof of the underlying allegations. The merits and likely success of claims based on Black Wolf's alleged pre-closing negligence are irrelevant to the resolution of the obligation to indemnify. Accordingly, Great Wolf's motion to withdraw its admission of no negligence by Black Wolf is moot.

## ORDER

IT IS ORDERED that Black Wolf's motion for summary judgment is DENIED and Great Wolf's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that judgment be entered dismissing Black Wolf's claim for indemnification.