In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-2209

JAMES J. FOSKETT, MARY C. FOSKETT and PHYSICIANS'
BENEFITS TRUST LIFE INSURANCE CO.,

*Plaintiffs,*

*v.*

GREAT WOLF RESORTS, INC., GREAT BEAR LODGE OF
WISCONSIN DELLS, LLC and GREAT LAKES SERVICES, LLC,

*Defendants/Third-Party Plaintiffs-Appellees,*

*v.*

BLACK WOLF LODGE, LLC, TALL PINES RENTAL,
LLC, N/K/A J&A REAL ESTATE VENTURE, LLC,
TALL PINES REALTY, LLC, ET AL.,

*Third-Party Defendants-Appellants.*

Appeal from the United States District Court for
the Western District of Wisconsin.
No. 06 C 0503 S—**John C. Shabaz**, *Judge.*

ARGUED DECEMBER 6, 2007—DECIDED MARCH 5, 2008

Before EASTERBROOK, *Chief Judge*, and CUDAHY and
RIPPLE, *Circuit Judges.*

CUDAHY, *Circuit Judge*.   This case emerges from the sale of a Wisconsin water park by Black Wolf Lodge, LLC (Black Wolf), Tall Pines Rental, LLC, Tall Pines Realty, LLC and Tall Pines Development of Wisconsin Dells, LLC (collectively, Sellers) to Great Bear Lodge of Wisconsin Dells, LLC (Buyer).[1] The asset purchase agreement for the transaction required the Sellers to indemnify the Buyer against claims resulting from pre-closing acts, omissions or events and required the Buyer to indemnify the Sellers against claims resulting from post-closing acts, omissions or events. Almost seven years after the transaction was completed, the Buyer was sued by a park visitor who allegedly was injured on one of the park's attractions. The Buyer sued the Sellers for contributory negligence and the Sellers tried to invoke their right to indemnification under the asset purchase agreement. After the Buyer refused to indemnify the Sellers, the Sellers counterclaimed for indemnification. Both parties moved for summary judgment on the indemnification issue. The district court found that the Buyer's contributory negligence claim resulted from the Sellers' allegedly negligent pre-closing design, installation and maintenance of one of the rides. As a result, the court concluded, the Sellers were not entitled to indemnification under the agreement. The Sellers ap-

---

[1] The Third Party Plaintiffs in this case include Great Wolf Resorts and Great Bear Lodge; the Third Party Defendants include Black Wolf Lodge; and the water park attraction involved in the case is the Tree Wolf slide at the Great Wolf Lodge water park. With the various wolves and bears involved in this case, our opinion could begin to sound like a twisted version of a Grimm Brothers' fairytale. For the sake of clarity, we refer to the parties as simply "Buyer" and "Sellers."

peal that decision. We reverse and direct that judgment be entered in favor of the Sellers.

## I. Background

Prior to 1999, Black Wolf owned and operated a water park and resort in Lake Delton, Wisconsin. In 1998, a new attraction, the Tree Wolf slide, was constructed at the park. In November 1999, the Buyer purchased the water park. The Buyer agreed to purchase the assets "as-is," subject to exceptions expressly included in the asset purchase agreement. For their part, the Sellers represented that they were "in compliance with all applicable Laws and Orders" and that they "ha[d] not received notice of any violation or alleged violation of any Laws or Orders." The Buyer agreed to assume the following liabilities of the Sellers:

> 2.1.(a) *Furniture, Fixture and Equipment Orders*. Sellers' obligations to purchase furniture, fixtures and equipment on order as of the Closing Date.
>
> 2.1.(b) *Contractual Liabilities*. Sellers' Liabilities relating to the period beginning with the Closing Date under and pursuant to the Contracts.
>
> 2.1.(c) *Liabilities Under Permits and Licenses*. Sellers' Liabilities arising on and after the Closing Date under any permits or licenses listed in *Schedule 4.9(b)* and assigned to Buyer at the Closing.
>
> 2.1.(d) *Prorated Liabilities*. Liabilities of Sellers for which Buyer receives a credit against the Purchase Price (as defined below) at Closing.

Section 2.2 of the agreement expressly limited the Buyer's assumption of liabilities:

2.2 *Liabilities Not to be Assumed*.

Except as and to the extent specifically set forth in Section 2.1, Buyer is not assuming any Liabilities of Sellers and all such Liabilities shall be and remain the responsibility of Sellers. Without limiting the generality of the foregoing sentence, Buyer is not assuming and Sellers shall not be deemed to have transferred to Buyer the following Liabilities of Sellers, except to the extent specifically set forth in Section 2.1:

* * *

2.2.(e)   *Violation of Laws or Orders*. Liabilities of Sellers for any violation of or failure to comply with any applicable statute, law, ordinance, rule or regulation (collectively, "Laws") or any order, writ, injunction, judgment, plan or decree (collectively, "Orders") of any court, arbitrator, department, commission, board, bureau, agency, authority, instrumentality or other body, whether federal, state, municipal, foreign or other (collectively, "Government Entities").

As in any asset sale, the parties had to agree on how to allocate the risk that any of the assets were defective and the risk that claims, particularly tort claims, would be brought against either party after the transaction's closing date. To this end, the agreement also included the following indemnification provisions:

10.1   *By Sellers*.

Subject to the terms and conditions of this Section 10, Sellers shall, jointly and severally, indemnify, defend and hold harmless Buyer, and its directors, officers, employees and controlled and controlling persons (hereinafter "Buyer's Affiliates"), from and against

all Claims (as hereafter defined) incurred by Buyer, Buyer's Affiliates, the Business or the Purchased Assets by reason of or resulting from:

10.1.(a) the material inaccuracy or breach of any representation or warranty of Sellers contained in or made pursuant to this Agreement;

10.1.(b) the material breach of any covenant of Sellers contained in this Agreement;

\* \* \*

10.1.(d) any Claim of or against Buyer, the Purchased Assets or the Business resulting from acts, omissions or events occurring prior to the Closing Date, and not specifically assumed by Buyer pursuant to this Agreement;

\* \* \*

10.1.(f) any Claim of violation or infringement of Laws and/or Orders in existence as of the Closing Date;

\* \* \*

10.2  *By Buyer.*

Subject to the terms and conditions of this Section 10, Buyer shall indemnify, defend and hold harmless Sellers, their officers, employees, Members and controlling persons from and against all Claims incurred by any such person by reason of or resulting from: (a) the material inaccuracy or breach of any representation or warranty of Buyer contained in this Agreement; (b) the material breach of any covenant of Buyer contained in this Agreement; (c) any Claim of or against Sellers, the Purchased Assets or the Business

resulting from acts, omissions or events occurring on or after the Closing Date, except for Claims described in Sections 10.1(e) or 10.1(g) . . . or (f) all Claims of or against Sellers specifically assumed by Buyer pursuant hereto.

"Claim" is defined to include:

(i) all Liabilities; (ii) all losses, damages, judgments, awards, penalties and settlements; (iii) all demands, claims, suits, actions, causes of action, proceedings and assessments; and (iv) all reasonable costs and expenses (including, but without limitation, reasonable attorneys fees and costs) of investigating, defending or successfully asserting any of the foregoing or of successfully enforcing this Agreement.

Section 10.5(a) of the agreement limits the Sellers' indemnification obligations, providing that "[n]o claim or action shall be brought against Sellers under this Section 10 after the lapse of eighteen (18) months following the Closing Date." The parties agreed that Wisconsin law would govern the Agreement.

The closing occurred in November 1999 and the Buyer subsequently assumed the operation of the water park. Almost six years later, in August 2005, Dr. James Foskett allegedly suffered serious and permanent injuries when he struck the side of the Tree Wolf slide plunge pool. He and his wife filed a lawsuit against the Buyer in 2006 alleging that the slide and plunge pool were unsafe as designed and violated the Wisconsin Safe-Place Statute and state regulations. The Buyer, in turn, filed a third party complaint against the Sellers alleging that Dr. Foskett's injuries were caused by the Sellers' negligent "design, construction, installation, inspection, and/or

maintenance of the subject Tree Wolf ride." (R. 21 ¶¶ 12-13.) The Buyer sought contribution from the Sellers in the event that the Fosketts prevailed in their lawsuit. In response, the Sellers invoked § 10.2's indemnification provision and tendered the defense to the Buyer. When the Buyer refused to indemnify the Sellers, the Sellers counterclaimed for indemnification.

Both the Buyer and the Sellers subsequently settled with the Fosketts and moved for summary judgment on the indemnification issue. The Buyer argued that it is not obligated to indemnify the Sellers against claims arising from their own pre-closing negligence, namely, the allegedly negligent design, construction, inspection, installation and/or maintenance of the Tree Wolf slide. Interpreting the indemnification provision in the context of the entire agreement, the district court determined that "the language does not require, and the parties did not intend to require, [Buyer] to indemnify [Sellers] for claims based on [Sellers'] alleged negligent conduct prior to the sale." *Foskett v. Great Wolf Resorts, Inc.*, 501 F. Supp. 2d 1214, 1217 (W.D. Wis. 2007). The Sellers appeal that decision.

## II. Discussion

We review grants of summary judgment de novo. *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 470 (7th Cir. 2007). In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* On cross motions for summary judgment, "we construe all facts and inferences therefrom 'in favor of the party against whom the motion under consideration is made.'" *In re United Air Lines, Inc.*, 453

F.3d 463, 468 (7th Cir. 2006) (quoting *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005)). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Because resolution of this case is a matter of contract interpretation, we begin by noting that our goal is to ascertain the intent of the parties by reference to the language they used. *See State ex rel. Journal/Sentinel, Inc. v. Pleva*, 155 Wis.2d 704, 456 N.W.2d 359, 362 (1990). We are to give contractual terms the meaning "a reasonable person would understand the words to mean under the circumstances." *Seitzinger v. Cmty. Health Network*, 270 Wis.2d 1, 676 N.W.2d 426, 433 (2004). "Words and phrases cannot be considered in isolation; rather, the court must consider the contract as a whole to provide each provision with the meaning intended by the parties." *First Bank & Trust v. Firstar Info. Servs., Corp.*, 276 F.3d 317, 322 (7th Cir. 2001) (citing *Campion v. Montgomery Elevator Co.*, 172 Wis.2d 405, 493 N.W.2d 244, 249 (Ct. App. 1992)). A contract must "be construed so as to give a reasonable meaning to each provision of the contract" and so as to avoid "render[ing] portions of a contract meaningless, inexplicable or mere surplusage." *Goebel v. First Fed. Sav. & Loan Ass'n of Racine*, 83 Wis.2d 668, 266 N.W.2d 352, 358 (1978).

With these principles in mind, we turn to the language of the indemnification provision that the Sellers invoke. Section 10.2 of the asset purchase agreement requires the Buyer to indemnify the Sellers against claims "resulting from acts, omissions or events occurring on or after the Closing Date . . . ." The first question we must address,

therefore, is whether the Buyer's contribution claim against the Seller "resulted from" a post-closing "act, omission or event." The Buyer argues that the contribution claim "resulted from" the Sellers' allegedly negligent pre-closing design and construction of the Tree Wolf slide. The district court agreed with the Buyer, interpreting the phrase "resulting from acts, omissions or events occurring on or after the Closing Date" as referring to "conduct of the parties themselves which becomes the basis for a claim." *Foskett*, 501 F. Supp. 2d at 1217. We reject this interpretation. Sections 10.1 and 10.2 of the asset purchase agreement show that the parties intended to allocate the risk of tort liability based on who had control over the water park facilities when the claim arose.

Even if the Sellers were negligent in their design and construction of the Tree Wolf slide in 1998, at most there existed only inchoate, potential liability until the accident occurred in 2005. A negligence claim requires "an actual loss or damage as a result of the injury." *Avery v. Diedrich*, 301 Wis.2d 693, 734 N.W.2d 159, 164 (2007) (quoting *Nelson v. Davidson*, 155 Wis.2d 674, 456 N.W.2d 343, 345 (1990)). Until the accident, there was no injury or damage, and therefore no negligence claim. *See also Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 621 (8th Cir. 2006) ("The precise event giving rise to a tort suit is the event causing the actual injury or damages. . . . '[T]here can be no tort liability without damage to persons or property.'") (citation omitted); *Heil v. Morrison Knudsen Corp.*, 863 F.2d 546, 550 (7th Cir. 1988) ("[A] tort is not wrongful conduct in the air; the arrow must hit its mark. . . . Until there is hurt, there is no tort.") (discussing Illinois law) (citation omitted). Dr. Foskett's negligence claim and the Buyer's contributory negligence claim did

not result from allegedly negligent pre-closing acts but from the post-closing accident. As a result, the Sellers are entitled to indemnification by the Buyer.

This reading of § 10.2 reflects the most plausible understanding of the parties' risk allocation. If each party really intended to assume liability for its own conduct, as the district court believed, it makes little sense that the Sellers' indemnification obligations would expire eighteen months after the closing. If the indemnification provisions made each party responsible for its own conduct, one would expect the Sellers' indemnification responsibilities for claims resulting from their pre-closing negligence to exist in perpetuity, or at least as long as the Buyer continued to own the water park. In addition, it makes great sense that the parties would allocate the risk of tort liability based on who was in a better position to prevent events giving rise to claims. Prior to the closing, the Sellers had ownership and control of the park and were the parties with the power to make any necessary safety-related improvements to the park's attractions. After the closing, however, the Sellers no longer had authority to maintain or repair the park facilities. That authority belonged to the Buyer. In light of these facts, it seems quite reasonable that the Sellers would seek to limit their tort liability after they surrendered ownership and control of the park. *See Cremona*, 433 F.3d at 621-22 (noting "[i]t certainly is sensible [the Seller] would contractually limit its liability" once it no longer had control over the injury-causing machine); *Union Elec. Co. v. Sw. Bell Tele. L.P.*, 378 F.3d 781, 786 (8th Cir. 2004) ("An agreement making each of these large commercial entities responsible for injuries to their own customers, agents, contractors and employees is a sensible allocation of loss because

each is in a better position to protect and insure against those losses . . . .").

While the Sellers' incentive to seek indemnification against negligence claims arising after the closing seems obvious, the Buyer argues that it makes no sense for it to indemnify the Sellers "for conduct that [the Buyer] had no opportunity to control, *e.g.*, the design and construction of the Tree Wolf slide, occurring a year *prior* to the Closing Date." (Appellee's Br. at 14) (emphasis in original). The Buyer's argument might be more persuasive if the agreement required it to indemnify the Sellers against their own future negligent conduct. An indemnitor may have difficulty anticipating whether an indemnitee will behave negligently in the future and may not be in a position to prevent negligent conduct that results in harm. *See Sutton v. A.O. Smith Co.*, 165 F.3d 561, 563 (7th Cir. 1999). But in this case, the Buyer took control of the water park in 1999 and has had ample opportunity to inspect the park's facilities and to detect and fix any defects that could give rise to tort liability, regardless of what the Sellers may have done prior to the sale. The interpretation we adopt not only represents a sensible allocation of risk between the parties; it also has the desirable effect of providing an incentive for the party with control over the park to make it safe. If the Buyer could forever turn to the Sellers as a source of funds after an accident, it may not have as great an incentive to spend money on repairs or improvements that could prevent the accident from occurring in the first place. We believe that sound "[p]ublic policy seeks to encourage people to exercise due care in their activities for fear of liability, rather than to act carelessly cloaked with the knowledge that an indemnity contract will relieve such

indifference." *Lampe v. Genuine Parts Co.*, 463 F. Supp. 2d 928, 935 (E.D. Wis. 2006) (quoting *Park Pride Atlanta, Inc. v. City of Atlanta*, 246 Ga.App. 689, 541 S.E.2d 687, 689 (2000)).

In short, it seems implausible that the Sellers would agree to an indemnification provision that left them exposed to liability for injuries that may occur many years after they lost the ability to prevent accidents like Dr. Foskett's. The indemnification provisions show that the parties did not intend such an implausible allocation of risk, agreeing instead that the Buyer would be required to indemnify the Sellers for claims arising after the closing. Our reading of the indemnification provisions does not, as the Buyer asserts, render meaningless its right to indemnification under § 10.1. Rather, under our interpretation the Buyer had eighteen months during which it would be indemnified for any claims brought after the closing that resulted from pre-closing accidents or injuries. This is consistent with holding each party liable for accidents that occur while it is in a position to prevent those accidents. In addition, § 10.1 gave the Buyer eighteen months to seek indemnification for costs it incurred due to the Sellers' breach of a representation or warranty. Once the Buyer assumed ownership and control of the park, however, it was in the best position to prevent any injuries to visitors and thus, it was required to indemnify the Sellers against claims resulting from post-closing events, like Dr. Foskett's accident.

The district court noted that its interpretation of the indemnification provisions was consistent with the general rule that a party will not be presumed to have indemnified another against claims based on the indemnitee's own negligence. *Foskett*, 501 F. Supp. 2d at 1217-18. There exists an exception to this rule, however, where it is

clear that the parties intended that the indemnitee be covered even if the alleged losses are traceable to its own negligent conduct. *See Spivey v. Great Atl. & Pac. Tea Co.*, 79 Wis.2d 58, 255 N.W.2d 469, 472 (1977). This case falls within this exception. Reading the indemnification provisions together, it is clear that they are intended to create a workable system for allocating the risk that claims would be brought against either party after the closing. Adopting the Buyer's interpretation would mean that if Dr. Foskett's accident had occurred six months after the closing, each party could have demanded indemnification from the other; the Buyer could have demanded indemnification because the accident "resulted from" the Sellers' alleged pre-closing negligence; and the Sellers could have done so because the accident "resulted from" the post-closing accident. This would lead to the absurd result of each party's indemnifying the other for the same loss. *See Kabes v. Sch. Dist.*, 270 Wis.2d 502, 677 N.W.2d 667, 671 (Ct. App. 2004) (noting that courts should avoid interpreting contracts in ways that yield absurd results). The only reasonable construction of the contract is that for eighteen months the Sellers were required to indemnify the Buyer for claims that arose before the closing and the Buyer is required to indemnify the Sellers from claims that arise after the closing, regardless of whether the claim may be traced back to the conduct of the Sellers before the Buyer assumed control of the water park and many years before the accident giving rise to the claim occurred. *See Barrons v. J.H. Findorff & Sons, Inc.*, 89 Wis.2d 444, 278 N.W.2d 827, 831 (1979) (noting that courts will construe agreements to indemnify a party against claims resulting from its own negligence "if that is the only reasonable construction").

Although we believe the language of the indemnification provisions clearly places the Buyer's contributory negligence claim within the scope of its indemnification obligations, we address how our interpretation fits within the context of the entire agreement to ensure that we "giv[e] a reasonable meaning to every provision of the contract" and avoid "leaving some of the language useless or superfluous." *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999) (citing *Heritage Mut. Ins. Co. v. Truck Ins. Exch.*, 184 Wis.2d 247, 516 N.W.2d 8, 9 (Ct. App. 1994)). We disagree with the Buyer's assertion that our interpretation is inconsistent with the assumption of liabilities set forth in §§ 2.1 and 2.2 of the asset purchase agreement. Those sections state that the Buyer assumes only the liabilities expressly included in the agreement. Because those liabilities do not include the Sellers' tort liabilities, the Buyer asserts, requiring it to indemnify the Sellers for the Sellers' alleged negligence would contradict these sections. The Buyer also points out that § 2.2(e) expressly excludes from the liabilities the Buyer assumed any liability for a "violation of or failure to comply with any applicable" law and argues that because Dr. Foskett's complaint alleged that the Tree Wolf slide was in violation of Wisconsin law, § 2.2(e) precludes the Sellers from seeking indemnification for post-closing injuries based on these alleged pre-closing violations. It is clear from the language of the asset purchase agreement that the limitations on the Buyer's assumption of liabilities described in §§ 2.1 and 2.2 do not govern a negligence claim arising after the closing date. Section 2.1 defines "Liability" as "any direct or indirect indebtedness, guaranty, endorsement, claim, loss, damage, deficiency, cost, expense, obligation or responsibility, fixed or unfixed, known or unknown, asserted or unasserted, liquidated or unliquidated, secured or unsecured."

The definition does not include "potential claims" or claims "existing or non-existing." Since neither Dr. Foskett's claim nor the Buyer's contributory negligence claim existed until after the accident occurred in 2005, whatever *potential* liability the Sellers may have had for their alleged pre-closing negligence is not a "liability" as defined in the agreement. Thus, our reading of the Buyer's indemnification obligations is entirely compatible with the asset purchase agreement's distribution of liabilities between the parties.

After determining the Sellers were not entitled to indemnification because the Buyer's contributory negligence claim "resulted from" the Sellers' alleged pre-closing negligence, the district court also held that the Buyer was not required to offer proof of the Sellers' negligent conduct in order to avoid its indemnification responsibilities. The conclusion that the Sellers lose their right to indemnification not only if they *were* negligent but if anyone *says* they were negligent strikes us as a dubious one. *See Sutton*, 165 F.3d at 564. But because we find that the relevant event for indemnification purposes is the post-closing accident, and not the Sellers' allegedly negligent pre-closing conduct, we need not reach the question whether the district court erred on this point.

## III.  Conclusion

For the foregoing reasons, we REVERSE the judgment of the district court and direct that judgment be entered in favor of the Sellers.