OPINION OF THE COURT
RENDELL, Circuit Judge.
This case concerns the interpretation of an indemnification clause in a contract for the sale of a business. Cross-claim defendant Eaton Corp. (“Eaton”) appeals from the District Court’s grant of summary judgment and order of indemnification in favor of defendant and cross-claim plaintiff HK Systems, Inc. (“HK”). On appeal, Eaton disputes the District Court’s decision to grant summary judgment to HK, arguing that Eaton was not contractually obligated to indemnify HK, that the District Court improperly relied on evidence of Eaton’s settlement with Hudson, that indemnification is precluded by a New Jersey statute of repose, and that the District Court erred in not addressing Eaton’s argument concerning HK’s alleged lack of good faith cooperation. Because we conclude that the District Court properly granted summary judgment to HK, we will affirm the judgment of the District Court.
I. Background
Between 1989 and 1991, Eaton-Kenway, a subsidiary of Eaton, designed, built, and installed an Automated Material Handling System (“AMHS”) that it sold to Exxon-Mobil for a plant in New Jersey. In 1995, Eaton sold Eaton-Kenway’s assets to a predecessor to HK, pursuant to an Asset Purchase Agreement (“APA”). After the sale, HK contracted with Exxon-Mobil to provide occasional maintenance for the AMHS.
This case arises out of an injury suffered by Charles Hudson (“Hudson”), an Exxon-Mobil employee working at the New Jersey plant. On February 13, 2004, Hudson was injured on the job when he was struck by a mobile robotic component of the AMHS. Hudson filed a products liability, breach of warranty, and negligence complaint in New Jersey state court against Siemens Logistics and Assembly Systems, Inc. (“Siemens”), as the manufacturer of an AMHS component; HK, as the successor to Eaton-Kenway; and other unnamed corporations.
The defendants removed the case to the United States District Court for the District of New Jersey on the basis of diversi *720 ty jurisdiction. The APA contains cross-indemnification provisions requiring Eaton to indemnify HK’s “costs and expenses (including attorneys’ and accountants’ fees) ... resulting from ... any act or omission of [Eaton] or any occurrence of a matter with respect to the Subject Assets or the Subject Business relating to or arising out of the period [before the APA].” Appellant’s App. 95. Similarly, the APA requires HK to indemnify Eaton’s “costs and expenses (including attorneys’ and accountants’ fees) ... resulting from ... any act or omission of [HK] or any occurrence of a matter with respect to the Subject Assets or the Subject Business relating to or arising out of the period [after the APA].” Id. Pursuant to the APA, HK tendered its defense to Eaton, asserting that the injury-causing component was manufactured by Eaton prior to the APA. The APA allows the “Indemnifying Party” the option of undertaking a defense or letting the “Claiming Party” defend itself and then pursue indemnification. Before accepting or rejecting the tender, Eaton requested a review of HK’s information relating to the complaint. Eaton and HK disagree as to whether HK reasonably complied with this request.
On August 15, 2005, HK filed a third-party complaint against Eaton seeking indemnification. Hudson subsequently amended his complaint to add Eaton as a defendant, in its capacity as the parent of Eaton-Kenway, and to specify that HK “may have assumed certain liabilities associated with Eaton-Kenway’s design and manufacture of the [AMHS]” pursuant to the APA. Appellant’s App. 122. Eaton offered to accept HK’s tender of defense on August 29, 2006, subject to conditions, including that HK agree to waive any claims for defense costs incurred up to that point. HK rejected this offer.
On August 2, 2007, Eaton, HK, and Hudson participated in mediation, which resulted in a settlement between Eaton and Hudson. Hudson then voluntarily dismissed his claims against HK (although HK did not contribute to the settlement). Hudson also settled with Siemens.
Eaton and HK then each filed motions for summary judgment as to HK’s claim for indemnification. The District Court granted HK’s motion and denied Eaton’s motion, holding that HK was entitled to full indemnification by Eaton for attorneys’ fees and costs incurred as a result of defending against Hudson’s claims, and for attorneys’ fees and costs associated with the cross-claim for indemnification. Eaton moved for reconsideration; this motion was denied by the District Court. The District Court then entered a judgment ordering Eaton to indemnify HK. Eaton appeals.
II. Standards of Review
The APA specifies that it shall be interpreted according to Wisconsin law, and the parties do not dispute this. The parties additionally appear to agree that the New Jersey statute of repose properly applies to this dispute.
The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review decisions of district courts resolving cross-motions for summary judgment de novo. Startzell v. City of Phila., 533 F.3d 183, 192 (3d Cir.2008). Summary judgment is appropriate when “there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). In deciding motions for summary judgment, a court must draw all inferences in favor of the non-moving party. Startzell, 533 F.3d at 192.
A district court’s rulings on questions of fact are reviewed for clear error. E.g., *721 CNA v. United States, 535 F.3d 132, 139 (3d Cir.2008). A district court’s construction of the legal effect of a contract is a question of law reviewed de novo. E.g., N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1203 (3d Cir.1995). Under Wisconsin law, contracts are interpreted to give effect to the parties’ intent, as expressed in the language of the contract. E.g., Seitzinger v. Cmty. Health Network, 270 Wis.2d 1, 676 N.W.2d 426, 433 (2004). A court interprets the language of a contract consistent with what a reasonable person would understand the language to mean under the circumstances. Id. Here, the District Court, Eaton, and HK all agree that the APA is unambiguous. We exercise plenary review over a district court’s construction of a statute. E.g., United States v. Walker, 473 F.3d 71, 75 (3d Cir.2007). This applies whether a district court is interpreting a federal or state statute. See, e.g., Am. Soc’y for Testing & Materials v. Corrpro Cos., 478 F.3d 557, 566 (3d Cir.2007).
III. Interpretation of the APA

A. The District Court’s Treatment of the APA’s Indemnification Language

Eaton argues that the District Court erred in its interpretation of the contract when it found that the APA required Eaton to indemnify HK. The APA contains cross-indemnification provisions requiring Eaton to indemnify HK for “costs and expenses (including attorneys’ and accountants’ fees) ... resulting from ... any act or omission of [Eaton] or any occurrence of a matter with respect to the Subject Assets or the Subject Business relating to or arising out of the period [before the APA].” Appellant’s App. 95. The District Court concluded that Hudson’s claims arose out of pre-APA acts.
On appeal, Eaton does not directly dispute this. Instead, Eaton argues that the APA provides for a division of responsibility when both pre- and post-APA claims are pending. Because of this, Eaton argues that HK was potentially liable to Hudson — and therefore not entitled to indemnification — until the point during the litigation when it became clear to the parties that Hudson’s claim related to only pre-APA acts. Therefore, according to Eaton, it should owe no indemnification for costs incurred before that point.
These arguments are not supported by the language of the APA, which only states that parties may sever APA claims from unrelated claims for purposes of indemnification. In addition, as HK correctly notes, although Hudson’s factual allegations may have become clearer after he “served his expert reports,” his claims did not change. The original complaint asserted claims against HK only as the successor to Eaton-Kenway. In amending his complaint, Hudson merely added Eaton as a party, without changing his allegations. The District Court, based on the language of the APA, correctly agreed with HK that the APA provides for indemnification of “any and all” costs related to pre-APA events, and HK’s costs here are certainly related to a pre-APA claim.

B. Effect of Seventh Circuit Precedents

Eaton devotes considerable attention to two Seventh Circuit opinions that it argues support its position. Eaton first cites a Seventh Circuit case applying Wisconsin law, Foskett v. Great Wolf Resorts, 518 F.3d 518 (7th Cir.2008), for the proposition that the purpose of indemnification provisions is to relieve sellers of liability for accidents that they have no ability to prevent after relinquishing control of a facility. However, as HK correctly notes, there are two differences between Foskett and this case. Unlike in Foskett, here HK did not own or control the AMHS; instead, it *722 merely contracted with the owner for occasional maintenance. In addition, the indemnification clause at issue in Foskett dealt with costs “ ‘incurred by Buyer ... by reason of or resulting from ... any Claim ... resulting from acts, omissions or events occurring prior to the Closing Date.’ ” Foskett, 518 F.3d at 521. In this case, the indemnification clauses deal with costs “resulting from ... any act or omission of [Eaton] or any occurrence of a matter ... relating to or arising out of the period [before the APA].” Appellant’s App. 95. The “event” linked to the claim in Foskett was the injury, which occurred after the closing date, whereas here the relevant act occurred at the time the AMHS was manufactured and installed, rather than when Hudson was injured. For these two reasons, Foskett’s rationale does not apply.
Eaton also makes much of another Seventh Circuit case that recently interpreted the same contract that is at issue in this case. See HK Sys., Inc. v. Eaton Corp., 553 F.3d 1086 (7th Cir.2009), cert. denied, — U.S. -, 130 S.Ct. 116, 175 L.Ed.2d 33 (2009). In HK, the Seventh Circuit considered indemnification under the APA in a case where a third party sued HK for fraud and breach of contract related to the installation of a different AMHS. Id. at 1088. After settling with the third party, HK sued Eaton for indemnification, alleging that the suit arose from Eaton’s actions before the APA. Id. Eaton had designed the AMHS and begun negotiations for its sale with the third party before entering into the APA. Id. After HK purchased Eaton-Kenway, HK completed the negotiations, signed the contract, and hired a subcontractor to install the AMHS. Id.
The Seventh Circuit held that the APA did not require indemnification in that situation, since “without express language an indemnitor will not be found to have agreed to indemnify an indemnitee against the consequences of a breach of a contract that the latter signs after the indemnity contract ... goes into effect.” HK, 553 F.3d at 1091 (emphasis in original). This principle is not applicable to this case, where Eaton sold the AMHS to Exxon-Mobil prior to the execution of the APA.

C. Effect of a Groundless Underlying Claim

Eaton also argues that because Hudson’s claims were groundless, neither party could have been held liable, and thus neither is required to indemnify the other. This argument fails. Indemnification rights are not routinely limited to meritorious claims, and there is nothing in the APA that imposes such a limitation.
IV. The New Jersey Statute of Repose

A. Whether the Statute of Repose Applies

Eaton argues on appeal that the New Jersey statute of repose could have applied to bar Hudson’s claims, and therefore should apply here to bar HK’s claim for indemnity. The statute provides that:
No action, whether in contract, in tort, or otherwise, to recover damages ... for an injury to the person ... arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction.
N.J. Stat. Ann. § 2A:14-l.l(a).
New Jersey courts agree that indemnification claims are invalid when the statute *723 of repose applies. E.g., Ebert v. S. Jersey Gas Co., 307 N.J.Super. 127, 704 A.2d 579, 582 (N.J.Super.App.Div.1998). However, this statute of repose does not apply to product liability claims; claims against manufacturers and sellers of products are separately controlled by the New Jersey Products Liability Act, which provides a separate statute of limitations for product liability claims. Dziewiecki v. Bakula, 180 N.J. 528, 853 A.2d 234, 237 (2004); see N.J. Stat. Ann. § 2A:14-1.1 (statute of repose); N.J. Stat. Ann. § 2A:58C-1 et seq. (statute of limitations). In Dziewiecki, the New Jersey Supreme Court held that whether the statute of repose applies depends on the activities of the party seeking its protection. Dziewiecki, 853 A.2d at 237. If a defendant acts both as a manufacturer of a product and as an installer of an improvement to real property, and the cause of the plaintiffs injury is attributable to both of the defendant’s roles, the court should apply the statute of limitations to the product liability claims and the statute of repose to the claims against the defendant as an installer. Id. Therefore, if a plaintiffs complaint only contains product liability claims, the statute of repose does not apply. Id.
In his original complaint, Hudson asserted three causes of action against HK: strict liability as governed by the New Jersey Products Liability Act, breach of warranty, and negligence. We agree with the District Court that, as a matter of law, all of these claims “sound in products liability.” Appellant’s App. 13.19. The first claim is on its face a product liability claim; the breach of warranty claim refers to “merchantability”; and the negligence complaint twice refers to the component of the AMHS that caused the injury as a “product.” Id. at 111-15. In addition, Eaton’s own Statement of the Case refers to “an underlying products liability claim brought by Plaintiff Hudson.”
Therefore, because the District Court was correct in characterizing the underlying complaint as an action in product liability, based on Eaton’s role as a manufacturer of a product, Eaton’s argument fails. There is no need for us to reach the question of whether or not the AMHS is an “improvement to real property” under the statute of repose.

B. The District Court’s Treatment of Eaton’s Settlement with Hudson

Eaton argues that the District Court improperly relied on Eaton’s settlement with Hudson to conclude that the statute of repose would not apply and that Eaton was obligated to indemnify HK. In general, a court may not admit evidence of a settlement to demonstrate liability for or the invalidity of a claim. Fed.R.Evid. 408. If the District Court was using evidence of the settlement to establish Eaton’s liability, that would, as Eaton contends, be impermissible. However, it does not appear that this was the case. In its grant of summary judgment, the District Court stated:
Indeed, Eaton settled with the Hudsons, presumably because their claims were based on products liability principles. Had the Hudsons’ claims been based on [statute of reposej-protected activities, Eaton would have advanced this argument as a complete bar to the Hudsons’ claims against it.... As a result, the [statute of repose] cannot be used now to preclude HK’s action for indemnification on claims that Eaton itself did not believe the [statute of repose] protected.
Appellant’s App. 13.19.
The Court does not point to the settlement as proof of the validity or invalidity of the claim. Rather, the Court discusses the settlement only as support regarding the nature of the claim, and the conclusion that “the Hudsons’ claims against Eaton *724 arose out of Eaton’s manufacturer-of-product hat.” Id. After Eaton objected to the discussion of settlement, the denial of the motion for reconsideration disclaimed any reliance on these facts: “Even if the Court were to change its view on [the significance of the settlement], it does not change the fact that Eaton was wearing its manufacturer-of-product hat, and the Hud-sons’ claims arose from Eaton’s manufacturer-of-product hat. That finding alone is sufficient to determine that the [statute of repose] did not apply.” Appellant’s App. 9. Because the Court reached the same conclusion after disclaiming any reliance on the settlement, there is no error.
V. HK’s Alleged Lack of Cooperation
In its motion for summary judgment, Eaton argued that HK had breached the APA by not cooperating with Eaton’s information requests related to HK’s tender of defense. Eaton argued that because of this breach, it could not accept the tender of defense. Therefore, Eaton argues, it should not be held liable for HK’s attorney fees, because they could have been avoided if HK had provided Eaton with enough information to intelligently decide whether or not to accept the tender of defense. The District Court rejected this argument, holding that the APA only required cooperation after a tender of defense is accepted. On appeal, Eaton reasserts this argument, and HK disputes Eaton’s allegations of bad faith and lack of cooperation.
The record does not support Eaton’s version of events as demonstrating unexplained delays in communication. Hudson filed his complaint on November 15, 2004. HK tendered its defense to Eaton on January 13, 2005. In August of 2006, Eaton offered to accept HK’s tender of defense, but the conditions were not acceptable, so the tender was never accepted.
The District Court correctly read the language of the APA to only impose a duty to cooperate after a party accepts a tender of defense. See Appellant’s App. 96-97 (“The Indemnifying Party maj, ... at its expense, defend such a claim in its own name or, if necessary, in the name of the Claiming Party. The Claiming Pai'ty will cooperate with and make available to the Indemnifying Party such assistance and materials as may be reasonably requested of it, and the Claiming Party shall have the right, at its expense, to participate in the defense.... In the event the Indemnifying Party ... disputes any claim made by the Claiming Party and/or it shall refuse to conduct a defense against a Third Party Claim, then the Claiming Party shall have the right to conduct a defense against such claim and shall have the right to settle and compromise such claim without the consent of the Indemnifying Party.”). Because Eaton had not accepted HK’s tender at the time it requested further information from HK, Eaton had not yet triggered HK’s obligation to “cooperate” in Eaton’s defense of the litigation. Thus, HK’s actions could not have breached the APA.
Eaton also hints at a claim for a breach of the duty of good faith. However, as the District Court pointed out, Eaton did not raise this argument until its motion for reconsideration, and therefore it was waived and is not before us on appeal. See Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co., 124 F.3d 508, 519 n. 12 (3d Cir.1997).
VI. Conclusion
For the reasons set forth above, we will AFFIRM the Order of the District Court.